*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-0431**

State of Minnesota,
Respondent,

vs.

Jimmy Dawayne Lester,
Appellant.

**Filed April 13, 2015**
**Reversed**
**Chutich, Judge**

Hennepin County District Court
File No. 27-CR-11-33928

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Bridget Kearns Sabo, Assistant Public Defender, St. Paul, Minnesota; and

Jonathan P. Schmidt, Special Assistant Public Defender, Briggs and Morgan, Minneapolis, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Rodenberg, Judge; and Smith, Judge.

**CHUTICH**, Judge

Appellant Jimmy Dawayne Lester challenges the district court's denial of his motion to suppress evidence of heroin found in his seized rental car.  He contends that the police lacked probable cause to arrest him and to search the car.  He also challenges his conviction of third-degree possession of heroin, claiming that the circumstantial evidence was not sufficient to establish that he constructively possessed the heroin found in the car.  Because we conclude that probable cause did not exist to arrest Lester, we reverse.

**FACTS**

On October 26, 2011, Minneapolis Police Officer Kyle Ruud received a call from a confidential reliable informant.  Officer Ruud had worked with this informant for approximately two months, and in past investigations the police had corroborated the informant's information and used it to file charges.  The informant told Officer Ruud that a man, nicknamed "J.," would be delivering heroin in approximately ten minutes to the area of Broadway Avenue North and Washington Avenue North in Minneapolis.  The informant described J. as a black male, approximately 28 to 30 years old, between 5'9" to 5'10" tall, medium build, and medium/light complexion.  The informant had personally witnessed J. possessing and selling heroin many times within the last month.

Officer Ruud and four to five other officers set up surveillance of the area.  Within three minutes after receiving the informant's tip, Officer Ruud observed a car parked on Washington Avenue.  Two black males were in the car, and the man in the front passenger seat matched J.'s description.  Officer Ruud drove past the car with the

2

informant, and the informant identified the passenger as J. The driver was later identified as appellant Jimmy Dawayne Lester. After a few minutes, the officers observed the car pull into a nearby gas station. J. and Lester then left the car, went into the gas station, and came out a few minutes later.

When they emerged from the gas station, J. left and walked north to a sidewalk on the south side of Broadway. Police observed him pacing back and forth on the sidewalk for a few minutes, and he appeared to be talking on his cell phone. J., still talking on the phone, crossed University Avenue into a nearby parking lot. Officer Ruud noted that as J. was walking and talking on his phone, he was looking around as if waiting for somebody to arrive. Another car driven by a white male then pulled into the parking lot and J. got into the passenger seat. The car pulled out onto Broadway and headed east. After traveling several blocks, the police pulled the car over and arrested J. No contraband was discovered on J.'s person.

Meanwhile, Lester had pulled his car away from the gas pump and legally parked it on the north side of the gas station's parking lot. After watching Lester park, Officer Ruud ordered his squad to move in and arrest Lester. The police did not see any drugs in plain view when they arrested Lester; nor did they find drugs or any large sum of cash on Lester's person. Lester's car was then taken to the police station to be searched. Lester told police that the car was a rental in his name and that he rented it because his was being repaired.

A search of Lester's rental car revealed eleven plastic baggies containing "bindles" of suspected heroin hidden behind a panel in the car's center console. The

3

bindles tested positive for heroin with an estimated market value of approximately $400 to $600.

Lester was charged with third-degree possession of a controlled substance and second-degree sale of a controlled substance.[1]  Minn. Stat. §§ 152.023, subd. 2(a)(1) (Supp. 2011), .022, subd. 1(1) (2010).  Each count alleged that Lester was either acting alone or aiding another within the meaning of Minnesota Statutes section 609.05, subdivision 1 (2010).  Lester moved, in relevant part, to suppress the evidence obtained in the search of the car and dismiss all charges against him.  The district court denied Lester's motions, concluding that the police had probable cause to arrest Lester and that the search of Lester's rental car was independently supported by probable cause under the automobile exception.

Lester asked the district court to reconsider his argument that the police impermissibly exceeded the scope of an inventory search when his car was impounded. In a supplemental order, the district court again denied Lester's motion to suppress, reasoning that it need not address the inventory search exception because police had probable cause to search the car under the automobile exception.

The case proceeded to a bench trial.  When the state rested, Lester moved for a judgment of acquittal, and the district court denied his motion.  Lester then rested without presenting further evidence.  After the parties' closing arguments, the district court

---

[1] Lester was initially charged with second-degree possession of a controlled substance, but the complaint was subsequently amended.

4

convicted Lester of third-degree possession of heroin but acquitted him of second-degree sale of heroin. Lester appealed.

## D E C I S I O N

Lester argues that the district court erred in denying his motion to suppress because the police lacked probable cause to arrest him and any heroin discovered in the later search of his rental car was inadmissible as fruit of the poisonous tree. We agree.

The Fourth Amendment of the United States Constitution and Article I, Section 10 of the Minnesota Constitution protect against unreasonable searches and seizures. A warrantless search is per se unreasonable unless "one of a few specifically established and well-delineated exceptions applies." *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011) (quotation omitted). Without a warrant, an officer may validly arrest a suspect if "a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested to have committed it." Minn. Stat. § 629.34, subd. 1(c)(3) (2014). The "reasonable cause" statutory requirement is synonymous with the "probable cause" constitutional requirement. *State v. Merrill*, 274 N.W.2d 99, 108 (Minn. 1978).

"Probable cause to arrest exists when a person of ordinary care and prudence, viewing the totality of circumstances objectively, would entertain an honest and strong suspicion that a specific individual has committed a crime." *State v. Williams*, 794 N.W.2d 867, 871 (Minn. 2011) (quotation omitted). Whether probable cause exists is an objective inquiry that "requires something more than mere suspicion but less than the evidence necessary for conviction." *Id.* When we examine a district court's pretrial

order on a motion to suppress evidence, we review the factual findings for clear error and legal determinations de novo. *Diede*, 795 N.W.2d at 849.

### *Probable Cause to Arrest Lester*

The district court concluded that police had probable cause to arrest Lester based on the totality of the circumstances, including the informant's tip regarding the pending drug sale, the police officers' corroboration of the tip, and the officers' trained observations that J.'s behavior was consistent with that of a narcotics dealer and Lester's behavior was consistent with that of a "partner."

Police can rely on an informant's tip if it has sufficient indicia of reliability. *In re Welfare of G.M.*, 560 N.W.2d 687, 691 (Minn. 1997). To assess the reliability of a confidential informant's tip, "courts examine the credibility of the informant and the basis of the informant's knowledge in light of all the circumstances." *State v. Cook*, 610 N.W.2d 664, 667 (Minn. App. 2000), *review denied* (Minn. July 25, 2000).

The reliability of a confidential informant is measured using six different factors, two of which are relevant here: (1) an informant who has historically given reliable information is likely currently reliable, and (2) an informant who provides information that police can corroborate is likely reliable. *See State v. Ross*, 676 N.W.2d 301, 304 (Minn. App. 2004). The first requirement can be satisfied if an officer credibly testifies that the informant "has been reliable in the past because 'this language indicates that the informant had provided accurate information to the police in the past' and thus gives 'the magistrate . . . reason to credit the informant's story.'" *Id.* (quoting *State v. Wiley*, 366 N.W.2d 265, 269 (Minn. 1985)).

Here, the district court found the informant to be reliable, and we conclude that the record supports this finding. Officer Ruud testified that the informant had provided information in past investigations that led to the filing of charges. Police also corroborated the informant's tip: within minutes of receiving the tip, Officer Ruud observed a car parked in the area that the informant identified for the drug deal, and the informant positively identified the passenger as J.

"Recitation of facts establishing [an informant's] reliability by his proven 'track record,' however, does not by itself establish probable cause"; the informant "must still show a basis of knowledge." *Cook*, 610 N.W.2d at 668. The informant's basis of knowledge "may be supplied directly, by first-hand information," or "indirectly through self-verifying details that allow an inference that the information was gained in a reliable way and is not merely based on the suspect's general reputation or on a casual rumor circulating in the criminal underworld." *Id.*

The record establishes that the informant had a basis of knowledge concerning J. The informant had personally witnessed J. possessing and selling heroin multiple times within the last month. Thus, as to J., the informant's tip was strong evidence supporting probable cause for an arrest.

But the informant's tip focused *exclusively* on J.; the informant had no information about Lester, much less that J. would be selling drugs with a partner. The informant also did not specify whether J. would arrive in a car or hide drugs in a car. Despite the informant's total lack of knowledge concerning Lester, the state contends that the trained observations of the police during surveillance—combined with the informant's tip—were

7

sufficient to establish probable cause to arrest Lester. Specifically, the state credits Officer Ruud's training and experience that showed two people often work together to distribute drugs, and the person who drives usually remains in the car to guard the drugs hidden within.

"An officer may rely on his training and experience to draw inferences and make deductions that might well elude an untrained person." *State v. Skoog*, 351 N.W.2d 380, 381 (Minn. App. 1984) (quotation omitted). The evidence must be "sufficient to lead a reasonably prudent person to believe there is a basis for the search." *State v. Richardson*, 514 N.W.2d 573, 579 (Minn. App. 1994). Mere suspicion does not equate to probable cause, however. *Skoog*, 351 +N.W.2d at 381.

Here, the officer's strongest indicium of suspicious activity regarding Lester was that he remained parked in his car after J.'s departure. But a person could legally park a car for many legitimate reasons; it is not an action that would lead a reasonably prudent person to believe that someone is engaged in criminal activity. *See Richardson*, 514 N.W.2d at 579. And the record contains no evidence to suggest that Lester parked for an inordinately long time, which may have given more credence to the officer's suspicions. Instead, the record shows that Lester was arrested at the same time the police stopped the car in which J was riding and arrested J.

While we do not discount the officer's trained observations here, probable cause requires more than mere suspicion. *Skoog*, 351 N.W.2d at 381. It requires a person of ordinary care and prudence to "entertain an honest and strong suspicion that a *specific* individual has committed a crime." *State v. Ortega*, 770 N.W.2d 145, 150 (Minn. 2009).

8

The police may have suspected that Lester was engaging in a drug transaction, but they had no information tying either Lester or his rental car to the informant's predicted sale and most importantly, they did not witness an *actual* sale.

Furthermore, the factors that the state cites in support of probable cause to arrest Lester—the informant's tip and the officer's observations—all rely on a common thread: Lester's proximity to J. In *Diede*, the supreme court ruled that "[m]ere proximity to, or association with, a person who may have previously engaged in criminal activity is not enough to support reasonable suspicion of possession of a controlled substance." 795 N.W.2d at 844.

The police in *Diede* observed appellant driving a truck with a passenger who was suspected of previously selling narcotics. *Id.* When appellant stopped the truck, the police approached and seized her. *Id.* The supreme court held that the police did not have reasonable, articulable suspicion based merely on appellant's "proximity to, or association with" the passenger in her truck who was suspected of previously selling narcotics. *Id.* at 844-45.

Similar to the appellant in *Diede*, the police here had no specific reason[2]—other than Lester's proximity to J.—to suspect Lester of criminal activity. Moreover, the police in *Diede* did not even meet the *Terry* standard of reasonable suspicion, a lesser

---

[2] As discussed above, Lester parking his car outside the gas station is not the type of suspicious behavior sufficient to find probable cause. At most, the police had reasonable suspicion to approach Lester and gather further evidence which may have justified a search of the car.

standard than the probable cause required here. *See id.* at 845 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968)).

The state argues that *Diede* is distinguishable because the police in *Diede* suspected the passenger of *past* narcotics sales whereas the police here suspected Lester's passenger, J., of *currently* selling narcotics. We are not persuaded by this distinction: police observed no actual drug sale to validate their suspicion that Lester was involved in a drug transaction, and they did not observe Lester engage in anything other than innocuous behavior.

The district court, in distinguishing *Diede*, concluded that the facts here more closely resembled *State v. Davis*, an unpublished decision from this court. Unpublished decisions are not precedential. Minn. Stat. § 480A.08, subd. 3 (2014). And *Davis* is inapposite here.

In *Davis*, the appellant drove a friend to a park and waited while the friend sold cocaine to a police informant. No. A08-2268, 2010 WL 87238, at *1 (Minn. App. Jan. 12, 2010), *review denied* (Minn. Mar. 30, 2010). The friend then returned to the appellant's car where they conferred. *Id.* We concluded that police had reasonable suspicion to believe the appellant actively participated in the drug sale because—in addition to driving his friend and waiting during the sale—the appellant conferred with his friend afterwards, and the informant told police that he suspected the appellant was the main supplier of the cocaine. *Id.* at *2. Lester's situation is distinguishable from *Davis* because the police witnessed no actual sale here, and nothing in the confidential

reliable informant's tip even mentioned Lester, much less implicated him as a "main supplier."

Based on the totality of the circumstances at the time of Lester's arrest, a reasonable person could not entertain an honest and strong suspicion that he had committed a crime. Accordingly, we conclude that the police lacked probable cause to arrest Lester.

### *Automobile Exception*

The district court determined that the search of Lester's rental car was independently supported by probable cause under the automobile exception to the warrant requirement. Similarly, the state contends that we need not address the legality of Lester's arrest because the police had probable cause to search his car under the automobile exception. We disagree and conclude that probable cause to search Lester's rental car did not independently exist under the circumstances here.

Under the automobile exception to the warrant requirement, police can search a car without a warrant if they have probable cause to believe that the car is carrying contraband or illegal merchandise. *State v. Munson*, 594 N.W.2d 128, 135 (Minn. 1999) (quoting *Carroll v. United States*, 267 U.S. 132, 154, 45 S. Ct. 280, 285 (1925)). The probable cause that supports the search of a car is "basically the same" as the probable cause that supports an arrest, provided that the focus is on the car and not the person. *Cook*, 610 N.W.2d at 668 n.2.

11

The state cites a number of cases[3] to support its contention that probable cause to search Lester's vehicle can exist independent of probable cause to search Lester. None of these cases are persuasive here.

In *Chambers v. Maroney*, the issue was whether police had probable cause to search a car in which several suspected robbers had been arrested because the actual search did not occur until "some time after the arrest." 399 U.S. 42, 47, 90 S. Ct. 1975, 1979 (1970). The Supreme Court ultimately held that the "validity of an arrest is not necessarily determinative of the right to search a car if there is probable cause to make the search." *Id.* n.6. But the Court arrived at this conclusion *after* determining that police had probable cause to arrest the suspects inside the car. *Id.* at 46, 90 S. Ct. at 1978-79. Moreover, witnesses in *Chambers* told police that the robbers used a blue station wagon as a getaway car, and the suspects were arrested in a blue station wagon. *Id.* at 44, 90 S. Ct. at 1977.

---

[3] The state cites to a number of unpublished cases from this court, which although not precedential, may be persuasive. *Sarber v. Comm'r of Pub. Safety*, 819 N.W.2d 465, 469 n.3 (Minn. App. 2012). None of these persuade us here, however, that the search was permissible. In each case—unlike the circumstances here—police had probable cause to search the car because evidence *directly linked* the car to suspected criminal activity. *See State v. Jackson*, No. A13-0374, 2013 WL 4711220, at *1 (Minn. App. Sept. 3, 2013) (informant texted police a description of the car while he was riding inside it and personally saw drugs hidden inside the car's glove box), *review denied* (Minn. Nov. 12, 2013); *Barlow v. State*, No. A10-746, 2011 WL 134953, at *4 (Minn. App. Jan. 18, 2011) (marijuana found on appellant's person, appellant admitted that car contained more drugs, and dog sniff tested positive for drugs in car); *State v. White*, No. A09-1095, 2010 WL 3543338, at *3-4 (Minn. App. Sept. 14, 2010) (tip described appellant driving "a red SUV" and police observed a bag of marijuana in plain view inside the car's door), *review denied* (Minn. Nov. 23, 2010).

Here, police observed J. sitting in the car and leaving it. To be sure, it was not unreasonable for the police to suspect that J. could have hidden drugs inside the car. But mere suspicion of criminal activity does not satisfy probable cause. *State v. Brazil*, 269 N.W.2d 15, 19 (Minn. 1978). And the officers' belief that J. hid drugs inside the car was nothing more than suspicion: police did not observe J. hide anything inside the car, the informant did not say anything about J. using a car to deliver drugs or storing drugs inside a car, and the police saw no drugs in plain view when they arrested Lester.[4]

When police discover evidence as the result of an illegal search, the fruits of that search must be excluded. *State v. Hardy*, 577 N.W.2d 212, 217 (Minn. 1998). Here, police lacked probable cause to arrest Lester and search his rental car; therefore the heroin that was discovered in Lester's rental car must be excluded. Given our conclusion above, we need not address Lester's remaining arguments.

**Reversed.**

---

[4] We recognize that probable cause to search the car may well have existed had J. been in the car when the police arrested him. But once J. left the car, barring some other observation or tip about Lester or the car, probable cause to search the car dissipated.