**STATE of Minnesota,
Petitioner, Appellant,**

v.

**Jeffrey A. McCLOSKEY, Respondent.**

No. C8–89–811.

Supreme Court of Minnesota.

April 6, 1990.

Hubert H. Humphrey, III, State Atty. Gen., St. Paul, and Scott A. Hersey, Isanti County Atty., Cambridge, for petitioner, appellant.

Thomas M. Kelly, Kelly & Jacobson, Minneapolis, for respondent.

KEITH, Justice.

This is another case dealing with the issue of reliance on information provided by an anonymous informant to establish probable cause to obtain a warrant to search a residence believed being used as a drug outlet. The majority of the court of appeals held that the search warrant affidavit failed to support the issuance of the warrant. *State v. McCloskey*, 451 N.W.2d 225 (Minn.App.1990). The dissent argued that the affidavit was adequate under *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, *reh'g denied*, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983) and *State v. Wiley*, 366 N.W.2d 265 (Minn. 1985). *McCloskey*, 451 N.W.2d at 229. We granted the state's petition for review and hold that the affidavit was adequate.[1]

The search warrant in this case was issued and executed on April 1, 1988. During the week preceding the issuance and execution of the search warrant a person walked into the Isanti County Sheriff's office and asked to speak with Sheriff William Schultz. The person, referred to as "CRI" in the affidavit supporting the search warrant application, expressed a concern that defendant was selling drugs to juveniles. CRI did not want to identify himself or herself, explaining that he/she "had a very strong fear of retribution should [defendant] find out who [he/she] was." CRI admitted having purchased marijuana from defendant but said he/she was upset with defendant because defendant was selling controlled substances to juveniles. CRI told the sheriff he/she had seen "crack" at the residence within the last week, that it was in chunk form, approximately 2½ inches in diameter, and was light or white colored. CRI said defendant was talking about the substance in terms of its being cocaine. According to the sheriff, the description provided by CRI "accurately describe[d] the type of cocaine * * * discovered in recent times in the area, being in raw chunk form."

Although CRI refused to give his/her name, he/she agreed to return the next day to help the sheriff in his investigation. CRI returned to the office the next day, as promised, and agreed to ride with the sheriff and show him where defendant's residence was located. On the way, CRI commented that the residence had a detached garage. On arriving, the sheriff saw a small house with a detached garage down a long driveway. CRI gave the sheriff the phone number he/she had used to contact defendant. CRI said defendant had a number of guns, carried a 7-inch blade in his boot, and had a large iguana in the house.

The sheriff verified the phone number as that of defendant and checked with the assessor's office and learned that defendant and his wife owned the house pointed out by CRI. The sheriff also checked police sources. The Isanti County Sheriff's

---

1. In view of our decision we do not address the issue of whether this court should follow *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), which held that the exclusionary rule does not bar the use of evidence obtained by police acting in reasonable reliance on a search warrant, issued by a neutral and detached magistrate, which is ultimately determined by the courts to be unsupported by probable cause.

Department contact card showed a DWI arrest in 1982, a probation violation warrant in 1983, a Ramsey County warrant in 1986 for expired plates, and a 1986 Hennepin County warrant for speeding. The traffic records showed defendant's license had been suspended several times for unpaid fines, a no-insurance conviction, a DWI and several speeding violations. Defendant's criminal history showed a 1975 arrest in St. Paul for criminal damage to property, disposition unknown, and an unprosecuted 1977 arrest in St. Paul for car theft.

The sheriff prepared an affidavit setting forth the above facts. A judge granted the application and issued the warrant on April 1, 1988.

Law enforcement officers executed the warrant at 6:40 p.m. that evening. While ordering defendant to open the door to the garage, where defendant was standing, a sheriff's deputy saw a cohort of defendant, James Brandberg, running from one corner of the garage to another with a gram scale in his hands. The officer searched Brandberg and found a tan colored powder substance in two small bags in his wallet and a small bottle containing a white substance in one of his pockets. The deputy saw traces of a light colored powder on the gram scale. Officers found a bag of marijuana in a motorcycle battery box in the garage. On a work bench they found a razor blade, a small knife, a coffee can with a tan powder in it, another coffee can with a white powder, and unused plastic bags. Nearby they found a marijuana pipe. Defendant had $459 on his person. In the master bedroom of the house the officers found $2,000 in cash, a bag of marijuana seeds, a "roach clip," and other paraphernalia. They found more marijuana in the basement and a framed picture with the words "Member International Association of Marijuana Growers and Users." In the living room they found more marijuana and marijuana paraphernalia. A green lizard-type animal apparently was seen at the house. The officers did not see any guns or cocaine. In addition to the controlled substances found on Brandberg's person, the officers found 4.65 grams of metham-phetamine in the garage and 24.7 grams of marijuana in the garage and the house. The white powder found in the garage did not contain controlled substances.

Defendant was charged with a number of counts of possessing controlled substances with intent to distribute. At the omnibus hearing the district court, relying on *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), denied defendant's motion to suppress. Defendant then waived his right to a jury trial and the case was submitted to the trial court on stipulated facts. The trial court found defendant guilty as charged.

As we said earlier, the court of appeals reversed in a 2–1 decision, ruling that the trial court erred in denying the motion to suppress.

In *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), the United States Supreme Court abandoned the so-called "two-pronged *Aguilar* test" as a rigid test that must be satisfied in order to establish probable cause to search or arrest on the basis of hearsay information. Under *Aguilar v. Texas*, 378 U.S. 108, 114–15, 84 S.Ct. 1509, 1513–14, 12 L.Ed.2d 723 (1964) the affidavit had to contain sufficient information establishing that the hearsay informant was credible and that the informant obtained his information in a reliable way. Inadequate tips under *Aguilar* could be saved if the police observed sufficient corroborating information. *United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1971); *see Spinelli v. United States*, 393 U.S. 410, 415, 89 S.Ct. 584, 588, 21 L.Ed.2d 637 (1969).

*Gates* adopted the so-called "totality of the circumstances" test. The Court said that in applying this standard the magistrate's task is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. The Court added that in reviewing the magistrate's determination the reviewing court must give deference to the magistrate's determination of probable cause and should uphold the determination if there was a "substantial basis" for the magistrate's determination. *Id.* at 238–39, 103 S.Ct. at 2332–33. As the Court later made clear in *Massachusetts v. Upton,* 466 U.S. 727, 733–34, 104 S.Ct. 2085, 2088–89, 80 L.Ed.2d 721 (1984), under the "totality of the circumstances" test the reviewing court is not to review each component of the affidavit in isolation but is to view them together.

█ We conclude that when all of the significant facts set forth in the affidavit in this case are viewed together, the affidavit provided the magistrate with a sufficient basis for concluding that the sheriff had the requisite probable cause for believing a search of defendant's house would result in the discovery of controlled substances.

We note at the outset that under the old two-pronged *Aguilar* analysis the basis-of-knowledge prong clearly would have been deemed to be satisfied, because the affidavit stated that the informant not only had bought marijuana from defendant at the house but had been present in the house, had seen what looked like cocaine, and had heard defendant refer to the substance as cocaine. The only real issue relates to the informant's credibility, specifically, his/her veracity with respect to this matter.

█ But for the fact that the informant admitted buying marijuana from defendant and refused to give his/her name, the informant here would qualify as a so-called citizen informer of presumed honesty and there would not be any question as to the adequacy of the affidavit. *State v. Siegfried,* 274 N.W.2d 113, 115 (Minn.1978) (the case contains information helpful to the police when drafting an affidavit based on information provided by a citizen informer). The fact that the informant here did not qualify as a citizen informant of presumed reliability does not mean that the informant was an informant of doubtful reliability from the criminal subculture. The less rigid approach of *Gates* recognizes that each informer is different and that all of the stated facts relating to the informer should be considered in making a totality-of-the-circumstances analysis. Here it is true that the informant admitted having bought marijuana from defendant, so we know that the informant was someone who apparently had used marijuana. However, we have said that a *conviction* of simply possessing a controlled substance arguably has little probative value on the issue of a witness' credibility. *State v. Zernechel,* 304 N.W.2d 365, 366 (Minn.1981).

Similarly, not all anonymous informants are the same. *Massachusetts v. Upton,* 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984), a per curiam opinion reversing the Massachusetts Supreme Judicial Court for failing to follow *Gates,* was a case in which the informer was a woman who called on the telephone and refused to give her name to the officer. When the officer said he knew she was the defendant's girl friend, she went along with the officer but, as the United States Supreme Court said, the caller's identity was not verified and it is possible that the caller merely adopted the officer's suggestion as a cover for her true identity. *Upton,* 466 U.S. at 734, 104 S.Ct. at 2088. According to the Court, this did not matter; all that mattered was that the officer's inference that she was who she said she was was a reasonable inference which conformed with the other pieces of evidence making up the total showing of probable cause. *Id.*

Simply saying that the informant here would not give his/her name and leaving it at that ignores other relevant facts about the informant. Significantly, the informant was not like the typical "stool pigeon" who is arrested and who, at the suggestion of the police, agrees to cooperate and name names in order curry favor with the police. This informant was not a blame shifter but someone who simply came forward. Not only did the informant come forward but he/she met face-to-face with the sheriff. In *State v. Davis,* 393 N.W.2d 179 (Minn.1986), we upheld a stop based on information provided a police officer in a brief face-to-face confrontation

with an unnamed tipster on the street. We said that by presenting herself to the police while in a car from which her identification might be traced, the informer was in a position to be held accountable for her intervention. *Davis*, 393 N.W.2d at 181. Here it is not clear that the informer's identity could be traced but we believe that the fact the informant came forward and met with the sheriff rather than completely hiding behind the cloak of telephonic anonymity, like the caller in *Upton*, is significant.

■ Not only did the informant come forward on his/her own and meet face-to-face with the sheriff, he/she did so a second time in response to the sheriff's request and rode with and directed the sheriff to the defendant's house. Further, he/she not only had a good reason for wanting anonymity (fear of retribution) but he/she had a good reason for wanting to see his/her supplier prosecuted (a belief defendant was selling drugs to juveniles). Even the dissenting justices in *United States v. Harris*, 403 U.S. 573, 600, 91 S.Ct. 2075, 2090, 29 L.Ed.2d 723 (1971), conceded that "any circumstances which suggest the probable absence of any motivation to falsify [and] an apparent motive for supplying the information" are relevant facts.

■ Additionally, while the informant's admission that he/she had bought marijuana from defendant perhaps is not technically a statement against penal interest since he/she did not give his/her name and therefore perhaps was not conscious that he/she could be prosecuted for making a statement against interest—*see United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1971)—the statement nonetheless was against the interest of the informant. The mere fact that the statement was in some way against the informant's interest is of some minimal relevance in a totality-of-the-circumstances analysis of probable cause.

Also, there was some independent corroboration of some of the information provided by the informant. It is true, as the court of appeals said, that it was not corroboration of key details. But in *State v. Wiley*, 366 N.W.2d 265, 269 (Minn.1985), the information corroborated (that a woman named Clare resided at a certain address and parked a 1973 Mercedes in front of the address) was similar and we said, "While not corroboration of a key detail, the corroboration did lend credence to the informer's tip." That there was this minimal corroboration is at least another relevant factor on which the magistrate was entitled to rely in making the totality-of-circumstances assessment of probable cause. Even the fact that defendant had been in some relatively minor trouble with the law was perhaps of some slight probative value. *See United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1971).

In conclusion, following *Gates, Upton* and *Wiley* and bearing in mind that the resolution of doubtful or marginal cases should be "largely determined by the preference to be accorded to warrants," *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), we believe that the correct conclusion is that there was a sufficient basis for the magistrate to issue the search warrant in this case.

Reversed and judgment of conviction reinstated.