*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1337**


State of Minnesota,
Respondent,

vs.

Jonathan Lamont Davis,
Appellant.


**Filed June 15, 2015
Affirmed
Johnson, Judge**

Hennepin County District Court
File No. 27-CR-12-35738

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Robert J. Shane, Shane Law Office, LLC, Minneapolis, Minnesota (for appellant)

        Considered and decided by Rodenberg, Presiding Judge; Johnson, Judge; and

Stoneburner, Judge.*

---

        *Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**JOHNSON**, Judge

Jonathan Lamont Davis was found guilty of first-degree controlled substance crime and child endangerment after a bench trial. On appeal, he challenges the district court's denial of his pre-trial motion to suppress evidence. We conclude that police officers had probable cause to arrest Davis based on a confidential informant's tip. Therefore, we affirm.

## FACTS

On October 25, 2012, Minneapolis Police Officer Matthew Kipke received information from a confidential informant that a person known as "Bon," who later was identified as Davis, was selling crack cocaine. The confidential informant said that he had purchased crack cocaine from Davis on numerous occasions. The confidential informant, while in Officer Kipke's presence, called Davis to arrange the purchase of three ounces of crack cocaine. After the telephone call, the confidential informant told Officer Kipke that Davis would arrive at the "usual location," a particular intersection in Minneapolis, within 20 minutes and that Davis would be driving either a blue Chevy van or a gold Chevy car. The confidential informant also described Davis as a black male, roughly 35 to 45 years old, with a medium build, and said that Davis usually wore a baseball hat and traveled alone.

Officer Kipke and other officers drove the confidential informant to the intersection he had described. They parked along the curb on the southbound side of the street. The confidential informant was seated in the rear of the vehicle with another

officer. After they parked, the confidential informant called Davis to report that he was "at the spot." After approximately 15 minutes, a blue van appeared behind the officer's squad car, traveling south on the same street. As the van passed the squad car, the confidential informant looked at the van and, according to Officer Kipke, "stated something to the effect of 'that's him.'"

Officer Kipke instructed other officers, by two-way radio, to arrest Davis. Two other officers stopped the van and approached it from the front. The officers saw a man sitting in the driver's seat and a child, who later was identified as Davis's nine-year-old son, in the passenger seat. The officers arrested Davis and performed a search incident to arrest. The officers found several small packages of crack cocaine, weighing a total of 94.2 grams, in a pocket of Davis's jacket.

The state charged Davis with one count of first-degree controlled substance crime, sale, in violation of Minn. Stat. §§ 152.021, subds. 1(1), 3(a), 152.01, subd. 16(a) (2012), and one count of endangerment of a child, in violation of Minn. Stat. § 609.378, subd. 1(b)(2) (2012). In June 2013, Davis moved to suppress the evidence seized in the search following his arrest. The district court held an evidentiary hearing at which Officer Kipke and Minneapolis Police Officer Efrem Madron Hamilton testified for the state. Davis argued that the warrantless arrest was not supported by probable cause. He conceded that if the arrest is valid, the search would be a valid search incident to arrest. In December 2013, the district court denied Davis's motion to suppress.

In April 2014, the case was tried to the district court on stipulated facts. *See* Minn. R. Crim. P. 26.01, subd. 3; *see also Dereje v. State*, 837 N.W.2d 714, 720-21 (Minn.

3

2013).  The district court found Davis guilty of both of the charged offenses.  The district court sentenced Davis to 60 months of imprisonment on the conviction of first-degree controlled substance crime.  Davis appeals.

## D E C I S I O N

Davis argues that the district court erred by denying his motion to suppress the evidence seized in the search following his arrest.  He contends that the confidential informant's tip was not reliable and, consequently, that there was not probable cause to arrest him on suspicion of a controlled substance crime.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV; *see also* Minn. Const. art. I, § 10.  A warrantless arrest is "presumptively invalid" under the Fourth Amendment unless the state shows that an exception applies.  *State v. Mastrian*, 285 Minn. 51, 56, 171 N.W.2d 695, 699 (1969).  One such exception provides that an officer "may arrest a felony suspect without an arrest warrant in any public place, including outside a dwelling, provided they have probable cause."  *State v. Walker*, 584 N.W.2d 763, 766 (Minn. 1998) (citing *United States v. Watson*, 423 U.S. 411, 96 S. Ct. 820 (1976)).  If the arrest is valid and supported by probable cause, the officers may conduct a warrantless search of the arrestee to remove weapons or to search for any evidence on the arrestee's person.  *State v. Varnado*, 582

4

N.W.2d 886, 892 (Minn. 1998). "A search incident to arrest is valid by itself and does not require any additional justification." *Id.* (citing *United States v. Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467, 476 (1973)).

The central issue in this appeal is whether the officers had probable cause to arrest Davis. Probable cause to arrest exists when "the objective facts are such that under the circumstances 'a person of ordinary care and prudence [would] entertain an honest and strong suspicion' that a crime has been committed." *State v. Johnson*, 314 N.W.2d 229, 230 (Minn. 1982) (quoting *State v. Carlson*, 267 N.W.2d 170, 173 (Minn. 1978)). In determining whether an arrest was supported by probable cause, we look at the totality of the circumstances surrounding the arrest, using an objective standard. *State v. Perkins*, 582 N.W.2d 876, 878 (Minn. 1998). Police may rely on a confidential informant's tip to conclude that probable cause exists, "if the tip has sufficient indicia of reliability." *State v. Cook*, 610 N.W.2d 664, 667 (Minn. App. 2000) (citing *In re Welfare of G.M.*, 560 N.W.2d 687, 691 (Minn. 1997)), *review denied* (Minn. July 25, 2000). "When assessing reliability, courts examine the credibility of the informant and the basis of the informant's knowledge in light of all the circumstances." *Id.* No single fact is determinative because "each informer is different and . . . all of the stated facts relating to the informer should be considered in making a totality-of-the-circumstances analysis" concerning the reliability of the information provided. *State v. McCloskey*, 453 N.W.2d 700, 703 (Minn. 1990). This court applies a clear-error standard of review to a district court's findings of historical fact and a *de novo* standard of review to the district court's determination of probable cause. *State v. Lee*, 585 N.W.2d 378, 383 (Minn. 1998).

5

Davis first contends that the district court clearly erred by finding that the confidential informant identified Davis as he drove the blue van past the squad car on the way to the intersection where he was arrested. In its order, the district court made the following finding of fact: "The [confidential informant], still seated in the unmarked squad car, indicated to Officer Kipke that the blue van was [Davis's] vehicle and that [Davis] was in the driver's seat." Davis contends that this finding is clearly erroneous on the ground that Officer Kipke "couldn't even tell if the [confidential informant] was looking at the driver when he said 'that's him.'" According to Officer Kipke, "The vehicle came up from behind us, the [confidential informant] looked in the direction of the van, it passed us, and the [confidential informant] immediately identified the van and stated something to the effect of 'that's him.'" On cross-examination, Officer Kipke conceded that he does not know with certainty that the confidential informant was able to see the driver, though he did see the confidential informant "looking towards the van." Officer Kipke further testified that he believed that the confidential informant saw Davis driving the van because any person who was looking at the van "would see the driver inside of the van" so that when the confidential informant said, "'that's him,' I was taking it that he identified the driver of the van."

In light of this evidence, a district court judge could find that the confidential informant merely identified Davis's vehicle but did not confirm that Davis was driving the vehicle. But a district court judge also could interpret the evidence to mean that the confidential informant both identified Davis's vehicle and saw that Davis was driving the vehicle. Even if a district court "could have concluded otherwise," a finding of fact will

6

not be reversed if there is "reasonable evidence to support the district court's findings of fact." *State v. Evans*, 756 N.W.2d 854, 870-71 (Minn. 2008) (quotations omitted). In reviewing a district court's findings of fact, we recognize that a district court judge may consider not only the words spoken by a person but also the manner in which the words are spoken, which may convey additional information about the meaning of those words. *See State v. Schulz*, 691 N.W.2d 474, 479 (Minn. 2005) (noting that defendant's "tone of voice and inflection is evidence" that may be considered by factfinder). In this case, Officer Kipke's testimony is sufficient to support the challenged finding because it indicates that he understood the confidential informant to say that he saw Davis driving the van. Thus, the district court did not clearly err by finding that the confidential informant identified Davis as he drove his van past the squad car immediately before his arrest.

Davis also contends that the district court erred by finding that the confidential informant's tip was reliable. The parties agree that the following six-factor test governs the issue:

> (1) a first-time citizen informant is presumably reliable; (2) an informant who has given reliable information in the past is likely also currently reliable; (3) an informant's reliability can be established if the police can corroborate the information; (4) the informant is presumably more reliable if the informant voluntarily comes forward; (5) in narcotics cases, "controlled purchase" is a term of art that indicates reliability; and (6) an informant is minimally more reliable if the informant makes a statement against the informant's interests.

*State v. Ross*, 676 N.W.2d 301, 304 (Minn. App. 2004); *see also State v. Munson*, 594 N.W.2d 128, 136 (Minn. 1999); *McCloskey*, 453 N.W.2d at 703; *State v. Wiley*, 366

7

N.W.2d 265, 269 (Minn. 1985). Davis contends that none of the factors indicates that the confidential informant's tip is reliable. In response, the state emphasizes only the third and sixth factors and contends that those factors indicate that the confidential informant's tip is reliable.

In this case, the third factor is most significant because the reliability of the confidential informant's tip is demonstrated by the officers' corroboration of the information he provided. *See State v. Albrecht*, 465 N.W.2d 107, 109 (Minn. App. 1991) (stating that "informant's credibility can be established by sufficient police corroboration of the informant's information"). The confidential informant provided information to the officer in a face-to-face conversation, and such a meeting puts the informer "in a position to be held accountable." *See McCloskey*, 453 N.W.2d at 703-04. The reliability of the confidential informant's prediction was enhanced by the fact that the confidential informant called Davis in the presence of Officer Kipke, who listened to the confidential informant's end of the conversation. During the phone call, Officer Kipke overheard the confidential informant arrange to buy three ounces of crack cocaine. Immediately after the call, the confidential informant told Officer Kipke that Davis gave a price of $1,400 per ounce. The confidential informant predicted that Davis would appear in a particular place at a particular time in one of two vehicles. When the squad car was parked near the intersection, Officer Kipke again heard the confidential informant's telephone conversation with Davis, during which the confidential informant indicated he was "at the spot." For these reasons, the confidential informant's information was significantly more likely to be reliable, as compared to a situation in which a confidential informant

8

supplies information that was obtained outside the presence of law-enforcement officers. *See, e.g.*, *Munson*, 594 N.W.2d at 132 (confidential informant called to say vehicle would arrive at particular address with drugs); *McCloskey*, 453 N.W.2d at 701 (confidential informant walked into sheriff's office to volunteer information about drug dealer's residence); *Wiley*, 366 N.W.2d at 268 (confidential informant told investigator he had seen weapons and drugs in particular residence). The reliability of the confidential informant's prediction was further established when Davis drove past the squad car in his van, which indicated that the confidential informant had accurately predicted details about Davis's future, criminal conduct. *See Cook*, 610 N.W.2d at 668-69 (noting that informant's tip is more reliable if it corroborates future criminal behavior rather than innocuous details). Furthermore, the reliability of the confidential informant's prediction was confirmed before Davis's arrest when the other officers, who previously had been briefed on the confidential informant's description of Davis, were able to observe him as they approached him from the front of the van. Thus, the evidentiary record supports the district court's finding with respect to the third factor, corroboration.

The parties take differing positions on the sixth factor, which provides that a confidential informant is "minimally more reliable" if he makes a statement contrary to his own self-interest. *See Ross*, 676 N.W.2d at 304. Davis contends that the confidential informant should be deemed not reliable because he was a "stool pigeon," who cooperated with law-enforcement officers in hopes of avoiding or minimizing punishment for his own criminal conduct. Davis's contention is based largely on facts

9

that are not included in the appellate record.[1]  The general principle inherent in the sixth factor is that a confidential informant is more likely to be credible if he has made an admission against his interest.  *See Ross*, 676 N.W.2d at 304; *see also State v. Siegfried*, 274 N.W.2d 113, 115 (Minn. 1978).  The confidential informant in this case admitted to purchasing crack cocaine on multiple occasions.  That admission makes his information "minimally more reliable."  *See Ross*, 676 N.W.2d at 304.  Thus, the sixth factor supports the district court's finding that the CI's information was reliable.

Because the third factor established reliability, we need not address the other factors.  We note, however, that the first and second factors do not come into play in this case.  The record indicates that Officer Kipke had not worked with the confidential informant in the past, which shows that the second factor is not relevant.  *See Ross*, 676 N.W.2d at 304.  The record does not indicate whether the confidential informant was a "first-time citizen informant" who is deemed to be "presumably reliable."  *See id.*

In sum, the district court did not clearly err in its findings and, thus, did not err by denying Davis's motion to suppress evidence.

**Affirmed.**

---

[1]In support of this contention, Davis refers to two exhibits that he offered at the suppression hearing: an audio-recording of defense counsel's interview of the confidential informant and a transcript of the interview.  Davis offered the exhibits to the district court for the limited purpose of supporting his motion for a continuance of the suppression hearing to allow additional time to serve a subpoena on the confidential informant.  The district court denied Davis's request for a continuance.  The district court did not admit the exhibits into evidence for purposes of determining the reliability of the confidential informant.  Thus, we will not consider the exhibits when reviewing the district court's denial of Davis's motion to suppress evidence.  *See State v. Breaux*, 620 N.W.2d 326, 334 (Minn. App. 2001).