PAGE, Justice
(dissenting).
I respectfully dissent. It is apparent that the court is willing to go to any length — including ignoring Minn. Const, art. I, § 8,[1] and art. I, § 102a — to protect *880 its erroneous decision in State v. Shriner, 751 N.W.2d 538, 545 (Minn.2008) (establishing that the evanescent nature of alcohol in the bloodstream is a single-factor exigency), ' abrogated by Missouri v. McNeely, — U.S. -, 133 S.Ct. 1552, 1568, 185 L.Ed.2d 696 (2013) (holding that, contrary to this court’s decision in Shriner, the dissipation of alcohol in the blood does not create a per se exigency), and its progeny. In State v. Bernard, we “fundamentally departed] from longstanding Fourth Amendment principles” to justify a war-rantless breath test as a valid search incident to arrest — “creating a novel bright-line rule” that “simply réadopts a per se exigency under a different name.” 859 N.W.2d 762, 774, 779 (Minn.2015) (Page, J., & Stras, J., dissenting jointly). Now, adopting the good-faith exception, the court cavalierly ignores Minn. Const, art. 1, § 8, and would have us believe, contrary to federal precedent and its own reasoning, that its decision is a “narrow” one. The court acts as though “we live[] in a world without Missouri v. McNeely,” Bernard, 859 N.W.2d at 774 (Page, J., & Stras, J., dissenting jointly), and without Minn. Const, art. I, § 8. “But we do not live in such a world.” Id. McNeely is decided, and the court can avoid Minn. Const, art. I, § 8, only by mischaracteriz-ing the right at issue in this case and taking away the only available remedy for the violation of a constitutional right. The court accomplishes this by equating violations of Minn. Const, art. I, § 10, to causes of action not recognized at the common law — a concépt-not contemplated by the drafters of Article I, Section 8.
I.
The court asserts that its decision to adopt the good-faith exception to the exclusionary rule articulated in Davis v. United States, — U.S. -, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), does not violate Minn. Const, art. I, § 8, because the exclusionary rule is neither a constitutional right nor a remedy “vested at common law.” (Emphasis omitted.) The court’s assertion rests on two erroneous assumptions: (1) that the right at issue is the exclusionary rule itself, which it is not; and (2) that Article I, Section 8, is limited to remedies that vested at common law, which it is not. The rights at issue are the constitutional right to be free from unreasonable searches and the separate constitutional right to a remedy for a violation of the right to be free from unreasonable searches and seizures. In relying on the above assumptions, the court ignores the constitutional nature of the right to a remedy and misconstrues our Article I, Section 8, precedent to serve its own purposes.
As an initial matter, the court incorrectly frames the question of whether adopting the Davis good-faith exception violates Minn. Const, ait I, § 8. The question is not whether the exclusionary rule is itself a constitutional right, but whether the right underlying the exclusionary rule — the prohibition in Minn. Const, art. I, § 10, against unreasonable searches and sei *881 zures — is encompassed within the guarantee in Article I, Section 8, of a “certain remedy in the laws.” Undoubtedly it is.
Article I, Section 1, of the Minnesota Constitution states that “[g]overnment is instituted for the security, benefit and protection of the people.” Contained within this concept is the notion that the State must uphold and protect certain rights recognized in our state constitution as fundamental, including the “right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.” Minn. Const, art. I, § 10. Just as fundamental as the right to be free from unreasonable searches and seizures, expressed in Section 10, is Section 8’s guarantee of the right to a remedy in the laws “for all injuries or wrongs” to one’s “person, property or character.” See Davis v. Pierse, 7 Minn. 13, 18 (Gil. 1, 6) (1862) (explaining that neither the right to a jury trial, nor the right to be free from unreasonable searches and seizures, “is more sacred to the citizen, or more carefully guarded by the constitution, than the right to have a certain and prompt remedy in the laws for all injuries or wrongs to person, property, or character”).
The guarantee in Article I, Section 8, of a remedy is not only “carefully guarded by the constitution,” Davis, 7 Minn, at 18 (Gil. at 6), but it is also broad. Nothing in the language of Section 8 indicates that the guarantee of a “remedy in the laws” for “[e]very person,” and for “all injuries or wrongs ... to [one’s] person, property or character,” Minn. Const, art. I, § 8 (emphasis added), was intended to exclude violations of constitutional rights by State actors — particularly when the right at issue is as closely connected to protection of an individual’s “person” and “property” as that guaranteed by Sectijn 10. See Minn. Const, art. I, § 10 (guaranteeing “[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures” (emphasis added)). The connection between Section 10’s protection of person and property and Section 8’s guarantee of a remedy for all injuries or wrongs to person or property (or character) is set out in decisions rendered by our court shortly after the Minnesota Constitution was ratified. In these decisions our predecessors, as did the drafters of the Minnesota Constitution,[3] understood the person and prop *882 erty rights protected in Article I, Sections 8 and 10, to be rights inherent in and fundamental to every person. For example, in the context of discussing the scope of Article I, Section 8, we have stated, “The chief end of government is the protection of the rights of all — the bad no less than the good — and, even without a constitutional provision, every member of society may rightfully claim protection of his person and property.” Davis, 7 Minn, at 18 (Gil. at 6) (emphasis added) (relying, in part, on Article I, Section 8, to conclude that a legislative act “suspending the privilege of all persons aiding the rebellion against the United States, of prosecuting and defending actions and judicial proceedings in this State” was unconstitutional).
In Baker v. Kelley, we relied upon Article I, Sections 7[4] and 8, to declare unconstitutional a tax law that required persons whose real property was sold in a tax sale to bring an action testing the sale’s validity within 1 year of the recording of the tax deed or forever be barred from asserting ownership in the property. 11 Minn.- 480, 499 (Gil. 358, 376-77) (1866). Because the limitations period commenced with the recording of the tax deed, which could occur at a point in time before the owner’s possession was contested, the law, in effect, required an owner in possession of real estate to either anticipate a dispute concerning' his or her title and institute legal proceedings to prove ownership or suffer loss of title. Id. at 495-96 (Gil. at 372-74). We reasoned that the.challenged law violated Article I, Sections 7 and 8, by effectively denying, or placing impermissible conditions on, the ability of persons to vindicate their constitutionally guarded property rights. Id. at 498-99 (Gil. at 376-77). Specifically, we said:
The statute would deprive a person of his property if he fails to do an act which may be done or omitted without any violation of law, and which neither his duty or interest requires him to do, and makes the performance of such act a condition to his right to sue for or defend his property in the courts; whereas the constitution declares that he shall not be deprived of his property by any mere legislative act, and that he shall be entitled to “justice freely and without purchase, completely and without denial, promptly and without delay, conformably to the laws.” ... We do not mean to question the power of the Legislature to require a party to pay the necessary costs of litigation, or to prescribe rules for the guidance of courts and litigants, but it seems very clear that beyond this they cannot attach any conditions or limits to the rights that are guaranteed absolutely, unconditionally, freely and certainly, by the constitution. In attempting to do this, the law of 1862 is in conflict with [Minn. Const, art. I, §§ 7, 8], and it cannot therefore be sustained.
Id. at 489-99 (Gil. at 376-77) (emphasis added). We further indicated that the guarantees of due process and a certain remedy in the laws in Sections 7 and 8 extended not only to vindication of property rights, but also rights more closely associated with protection of the “person”: “It will be observed that our constitution guards property with the same care that it does life and liberty. If the plaintiff can be deprived of his property for the act or *883 omission complained of, so he could of his life or liberty.” Id. at 499 (Gil. at 377).
More broadly, our early Article I, Section 8, decisions indicate that, at the time Section 8 was adopted, entitlement to a remedy was understood to flow from the existence of legal rights. In Agin v. Heyward, we addressed whether a district court’s jurisdiction encompassed the enforcement of a mechanic’s lien for less than $100, despite the fact that the state constitution specifically granted original jurisdiction to the district courts only in cases in which the amount in controversy exceeded $100. 6 Minn. 110, 112 (Gil. 53, 55-56) (1861). We concluded that district courts have original jurisdiction “in every case where the constitution itself does not clearly confer it on some other court,” id. at 118 (Gil. at 62), reasoning that the Minnesota Constitution does not contemplate an interpretation that “would admit the possibility of there being a legal right that could not be judicially enforced, or a urrong without a remedy therefor in the law.” Id. at 115 (Gil. at 59) (emphasis added). Pointing to Article I, Section 8, we stated that “every person is entitled to a certain remedy in the laws,” and specified that “[tjhis includes the enforcement of rights as well as the redress of wrongs.” Id. (Gil. at 59) (emphasis added). Notably, Agin specifically dealt with a statutory right (to a mechanic’s lien). Id. at 110 (Gil. at 55). If we could not conceive of an interpretation of the Minnesota Constitution that “would admit the possibility of there being a legal right that could not be judicially enforced, or a wrong without a remedy” in the context of a legislatively created right, id. at 115 (Gil. at 59) (emphasis added), it is difficult to understand how we could conceive of a constitutionally recognized right without a remedy.[5]
*884 In this context, it is clear that Section 8’s guarantee of a “certain remedy in the laws” applies to rights guaranteed by the constitution, particularly rights, like that guaranteed by Section 10, relating to protection of person and property. The court, however, highlights cases in which we addressed common law, rather than constitutional, rights and remedies to assert that the protections of Article I, Section 8, do not extend to injuries or wrongs related to Article I, Section 10, violations. In Hickman v. Group Health Plan, Inc., we stated that, “[Sjection 8 ... only assures remedies for rights that vested at common law. The purpose of the section is to protect common law rights and remedies for which the legislature has not provided a reasonable substitute.” 396 N.W.2d 10, 14 (Minn.1986). Specifically, we concluded in Hickman that a statute prohibiting wrongful life and wrongful birth actions did not violate Minn. Const, art. I, § 8, because such actions were not remedies for rights that existed at common law. Id. at 12, 14. Similarly, in Olson v. Ford Motor Co., we concluded that application of the “seat belt gag rule” to preclude evidence of seat belt use in a crashworthiness action involving an allegedly defective seat belt did not violate Article I, Section 8, because the remedy for crashworthiness actions had not vested at common law by the time the Legislature passed the gag rule. 558 N.W.2d 491, 496-97 (Minn.1997).
The court asserts that, “[although some of our early cases suggest an expansive reading of the Remedies Clause, ... we have subsequently held that the Remedies Clause ‘does not guarantee redress for every wrong, but instead enjoins the [government] from eliminating those remedies that have vested at common law.’ ” (Citing Olson, 558 N.W.2d at 497; Hickman, 396 N.W.2d at 14.) This assertion has several problems, not least of which is the court’s characterization of our early Article I, Section 8, cases. We did not in these cases “suggest” an “expansive reading” of the Remedies Clause. Instead, we made it clear that Section 8’s statement that “[e]very person is entitled to a certain remedy in the laws for all injuries and wrongs ... to ... person, property or character” should be given effect and that the right to a remedy should be regarded as a constitutional right on equal footing with'the other guarantees contained within Article I of the Minnesota Constitution. For example, in Agin v. Heyward we explained that the Minnesota Constitution does not contemplate an interpretation that “would admit the possibility of there being a legal right that could, not be judicially enforced, or a wrong without a remedy therefor in the law.” 6 Minn, at 115 (Gil. at 59). In Davis v. Pierse, we emphasized that Section 8’s guarantee of a remedy is as “sacred” as the other rights secured by the constitution:
We would never for one moment suppose that the legislature has the power, under the constitution, to deprive a person, or class of persons, of the right of trial by jury, or to subject them to imprisonment for debt, or their persons, houses, papers and effects, to unreasonable searches; or their property to be taken for public use without just compensation; and yet neither of these is more sacred to the citizen, or more carefully guarded by the constitution, than the right to have a certain and prompt remedy in the laws for all injuries or *885 ivrongs to person, property, or character.
Davis, 7 Minn, at 18 (Gil. at 6) (emphasis added).
Further, we held in early cases like Davis and Baker v. Kelley that the Legislature violated Article I, Section 8, when it enacted laws that denied or effectively denied the ability of persons to vindicate constitutionally guarded rights. As noted above, the tax law challenged in Baker was deemed to violate Section 8 because it placed impermissible conditions on the ability of persons to enforce or defend their constitutionally guarded property rights. 11 Minn, at 498-90 (Gil. at 376-77). In Davis, we held that, under Article I, Section 8, the Legislature could not “directly or indirectly, for any cause whatsoever, deprive [a person] of his [or her] constitutional right to commence, maintain, or defend any action or other judicial proceeding.” 7 Minn, at 20 (Gil. at 8) (emphasis added).
The court not only minimizes the import of our early Remedies Clause cases, but also grossly overstates the impact of our more recent Remedies Clause eases, Hickman and Olson.[6] First, neither Hickman nor Olson addressed the Section 10 right to be free from unreasonable searches and seizures of person or property, or any other constitutionally recognized right.[7] Notably, Hickman addressed causes of action, wrongful birth and wrongful life, that not only have no basis in the constitution, but also have no basis in the common law or in statute. Therefore, our statement in Hickman that Article I, Section 8, only assures remedies for rights that vested at common law was broader than necessary to render our decision and is thus dictum — dictum that fails to acknowledge, *886 much less distinguish our early Section 8 decisions. Instead, Hickman cites, without explanation, to our decision in Haney v. International Harvester Co., 294 Minn. 375, 201 N.W.2d 140 (1972), for support. 396 N.W.2d at 14. Haney, however, includes no statement limiting application of Article I, Section 8, to remedies for rights that vested at common law. See generally Haney, 294 Minn. 375, 201 N.W.2d 140. It is difficult to believe that our decisions in Hickman and Olson overruled cases that, like Davis,- 7 Minn, at 18 (Gil. at 6), addressed the issue of a remedy for the violation of a constitutional right when that issue was not before us in either Hickman or Olson and when we made no reference to the Davis line of cases. See also Baker, 11 Minn, at 498-90 (Gil. at 376-77); Agin, 6 Minn. at 115, 118 (Gil. at 59, 62).
The court’s reliance on Olson also is misplaced because, under our reasoning in Olson, it is not entirely clear that the exclusionary rule did not “vest” at common law. In Olson, we indicated that “vested at common law” simply means that the remedy must be older than the statute or rule allegedly eliminating or impairing it. See 558 N.W.2d at 497 (concluding that there was no violation of Minn. Const, art. I, § 8, because judicial recognition of the crashworthiness doctrine in Larsen v. General Motors Corp., 391 F.2d 495, 502 (8th Cir.1968), occurred 5 years after the seat-belt-gag rule was enacted by the Legislature). Here, our recognition in 1993 that the exclusionary rule applies to evidence obtained in violation of Minn. Const, art. I, § 10, clearly predates our adoption, in this case, of the good-faith exception to that rule. See In re Welfare of E.D.J., 502 N.W.2d 779, 783 (Minn.1993) (applying exclusionary rule to evidence discovered as a result of a violation of Minn. Const, art. I, § 10); see also State v. Fort, 660 N.W.2d 415, 418-19 (Minn.2003) (same); In re Welfare of B.R.K., 658 N.W.2d 565, 578-80 (Minn.2003) (same). Therefore, applying Olson’s reasoning and the court’s adoption of that reasoning, the exclusionary rule in fact vested at common law and comes within the Remedies Clause in Article I, Section 8.
I would also note that this court’s decisions in cases like Hickman and Olson more broadly reflect separation of powers concerns and “the court’s reluctance to interfere with legislative schemes regulating complex social or political problems.” See Ruth Mickelsen, The Use and Interpretation of Article I, Section Eight of the Minnesota Constitution 1861-1984, 10 Wm. Mitchell L. Rev. 667, 684 (1984); see also Schermer v. State Farm Fire & Cas. Co., 721 N.W.2d 307, 316-17 (Minn.2006) (concluding that application of the filed-rate doctrine to bar insureds’ challenge to a premium surcharge would not violate Minn. Const, art. I, § 8, because the Legislature provided a “reasonable substitute” in the form of investigation and review by the Department of Commerce); Snyder v. City of Minneapolis, 441 N.W.2d 781, 789 (Minn.1989) (concluding that municipal damages cap did not violate Minn. Const, art. I, § 8, because the purpose of the cap is a “legitimate legislative objective”); Breimhorst v. Beckman, 227 Minn. 409, 436, 35 N.W.2d 719, 735-36 (1949) (compulsory Worker’s Compensation Act does not violate Minn. Const, art. I, § 8, because it provides a remedy that is an “adequate substitute” for common law or statutory action for damages for injuries sustained by employee in his or her employment). The same concerns regarding separation of powers and legislative deference are not present in a situation that, like here, involves violation of a person’s constitutional right to be free, in his or her person and property, from unreasonable searches and seizures, and a judicially created, rather than legislatively created, remedy.
*887 For these reasons, Minn. Const, art. I, § 8, requires a remedy for violations of Lindquist’s constitutional right to be free from unreasonable searches and seizures.
II.
The next question that must be addressed is whether the good-faith exception to the exclusionary rule leaves defendants without a “certain remedy in the laws,” in violation of Minn. Const, art. I, § 8. Generally, we have only found violations to our constitution’s Remedies Clause when a remedy for a wrong is completely lacking. See, e.g., Carlson v. Smogard, 298 Minn. 362, 366-69, 215 N.W.2d 615, 618-19 (1974) (concluding that a worker’s compensation law was unconstitutional in part because it abrogated a third-party tortfeasor’s common law right to indemnity without providing a “reasonable substitute” or pursuing a “legitimate legislative objective”); Baker, 11 Minn, at 493-94 (Gil. at 376-77) (concluding that a limitations provision in a tax statute was unconstitutional in part because its practical effect was to deny a remedy in most cases); Davis, 7 Minn. at 20 (Gil. at 8) (concluding that a statute violated Article I, Section 8, when it barred all persons who aided the “rebellion against the United States” from prosecuting or defending legal actions in the state).
The practical effect of the good-faith exception is to deny any meaningful remedy to persons deprived of their constitutional right to be free from unreasonable searches and seizures of person and property, which includes searches and seizures of blood or breath.[8] Cf. Skinner v. Ry. Labor Execs.’ Ass’n, 489 U.S. 602, 616-17, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (“Subjecting a person to a breathalyzer test, which generally requires the production of alveolar or ‘deep lung’ breath for chemical analysis, implicates similar concerns about bodily integrity and, like the blood-alcohol test we considered in Schmerber, should also be deemed a ’ *888 search.” (citations omitted)); Schmerber v. California, 384 U.S. 757, 767-68, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (recognizing that a “compelled intrusion[ ] into the body for blood to be analyzed for alcohol content” must be deemed a Fourth Amendment search).
The State claims that citizens are provided adequate remedies because federal law permits a person aggrieved by an unconstitutional search to file a lawsuit under 42 U.S.C. § 1983 (2012) (establishing a civil cause of action for persons whose federal constitutional or statutory rights were violated by a person acting under color of state law). A section 1983 action can hardly be classified as an “adequate remedy” because section 1983 does not provide a remedy for searches and seizures that violate Article I, Section 10, of the Minnesota Constitution. See West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250,101 L.Ed.2d 40 (1988) (“To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States.... ” (emphasis added)). Rights secured by Article I, Section 10, are not rights “secured by the Constitution and laws of the United States.”
Finally, the court’s reliance on the characterization of the exclusionary rule as an institutional deterrent does not alter the applicability of Article I, Section 8. In Agin v. Heyward, we broadly characterized Section 8’s guarantee of a remedy as including “the enforcement of rights as well as the redress of wrongs.” 6 Minn. at 115 (Gil. at 59). In that regard, it is worth noting that the Supreme Court of North Carolina relied, in part, on the Remedies Clause in its state constitution[9] to reject the Leon good-faith exception to the exclusionary rule, despite the court’s characterization of the exclusionary rule as an “institutional deterrent” rather than an individual remedy. State v. Carter, 322 N.C. 709, 370 S.E.2d 553, 560 (1988). The court explained that damages actions are inadequate alternatives to the exclusionary rule, reasoning that while it “may provide some relief upon occasion to an individual whose rights have been invaded ... [it] offers scant prospect of replacing the exclusionary rule as an institutional deterrent to unconstitutional invasions of privacy.” Id. Then the court stated; “Article I, section 18 of our state constitution directs our courts to provide every person with a remedy for injury. We will not abandon a proven remedy in favor of one which, because its ineffectualness is patent beforehand, mocks this constitutionally mandated guaranty.” Id.
Given the practical impact of the good-faith exception and the broad understanding of Article I, Section 8, we expressed in Agin and other cases, the court’s adoption of the good-faith exception in this case, as in Carter, mocks Section 8’s constitutionally mandated guarantee of a “certain remedy in the laws” and leaves those whose rights have been violated under Article I, Section 10, without a remedy. In the process, the court also mocks the legislatively created remedy for violations of Article I, Section 10, in Minn.Stat. § 626.21 (2014), discussed in detail in Justice Lillehaug’s dissent, which I join.
III.
The court’s decision in this case is not only inconsistent with Minn. Const, art. I, § 8, but is also inconsistent with the rea *889 soning of Davis v. United States, — U.S. -, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011). Further, the court’s decision is disingenuous as to its ultimate impact. Over the past 30 years we have steadfastly declined to adopt the good-faith exception for search and seizure violations, until now. See, e.g., State v. Brooks, 838 N.W.2d 563, 575 (Minn.2013) (Stras, J., concurring) (noting that we had yet to adopt the good-faith exception and had again declined the opportunity to do so); State v. Jackson, 742 N.W.2d 163, 180 n. 10 (Minn.2007) (“We note, however, that we have consistently declined to adopt, much less even address, the Leon ‘good faith’ exception.”); State v. Harris, 589 N.W.2d 782, 791 n. 1 (Minn.1999) (“[W]e need not address the state’s request for us to adopt the ‘good faith’ exception to the warrant requirement-”); State v. Zanter, 535 N.W.2d 624, 634 (Minn.1995) (“[W]e decline'at this time to address the applicability of a good faith exception.”); State v. Lindsey, 473 N.W.2d 857, 864 n. 4 (Minn.1991) (“[W]e need not and do not address the state’s contention that this court should follow the so-called good faith exception to the exclusionary rule adopted and applied by the United States Supreme Court....”); State v. McCloskey, 453 N.W.2d 700, 701 n. 1 (Minn.1990) (“In view of our decision we do not address the issue of whether this court should follow United States v. Leon....”).
After today, the exception will swallow the rule. While the court emphasizes the “narrowness” of its holding, stating that “[t]he Davis good-faith exception represents a small fragment of federal good-faith jurisprudence” and that “nothing in our opinion should be construed as authorizing the application of exceptions we have not explicitly adopted,” the opinion can only be read as opening the door to adoption of the whole panoply of exceptions. The court’s suggestion that it can pick and choose “fragments” of federal good-faith jurisprudence is nonsense given its rebanee on the rationale that deterrence of police misconduct is the “touchstone” of the exclusionary rule.
The deterrence rationale underlies not only Davis, but the entire line of good-faith exception cases, extending back to United States v. Leon, 468 U.S. 897, 920, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (holding that application of the exclusionary rule is unwarranted when police conduct a search in reasonable reliance on a facially valid search warrant later determined to lack probable cause). The Supreme Court expressly recognized in Davis that:
The basic insight of the Leon line of cases is that the deterrence benefits of exclusion vary with the culpability of the law enforcement conduct at issue. When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. But when the police act with an objectively reasonable good-faith belief that their conduct is lawful ... the deterrence rationale loses much of its force, and exclusion cannot pay its way.
— U.S. at —, 131 S.Ct. at 2427-28 (citations omitted). The Court mákes clear that the same rationale justifies its decision in Davis, explaining that “[ujnder our exclusionary-rule precedents, [the] acknowledged absence of police culpability dooms Davis’s claim,” and that “in 27 years of practice under Leon’s good-faith exception, we have ‘never applied’ the exclusionary rule to suppress evidence obtained as a result of nonculpable, innocent police conduct.” Id. at -, 131 S.Ct. at 2428-29.
*890 Furthermore, I find it difficult to ascertain a meaningful distinction between the deterrent effect of the Davis good-faith exception expressly adopted in this case and the other good-faith exceptions adopted by the United States Supreme Court. If a warrant is valid on its face, as in a Leon-type situation, 468 U.S. at 920, 104 S.Ct. 3405, what misconduct is there to deter when law enforcement executes a search or seizure in reliance on that warrant? Even in the context of police “conduct [that] involves only simple, ‘isolated’ negligence,” Davis, — U.S. at -, 131 S.Ct. at 2427 (citation omitted), the exclusionary rule arguably does not provide a meaningful deterrent effect. See Herring v. United States, 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) (“To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it....”).
In other words, the Davis good-faith exception is premised on, and inseparable from, Leon and its progeny. Therefore, it is difficult to understand how the court can suggest that its decision in this case has no implication beyond adoption of the specific good-faith exception created in Davis when the court says nothing that meaningfully distinguishes its reasoning from that of the Supreme Court in Leon and its progeny.
For these reasons, I respectfully dissent.

. Article I, Section 10, of the Minnesota Constitution provides:
The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized.
(Emphasis added.)

. Article I, Section 8, of the Minnesota Constitution provides:
Every person is entitled to a certain remedy in the laws for all injuries or wrongs which *880 he may receive to his person, property or character, and to obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformable to the laws.
(Emphasis added.)

. At the convention, Republican and Democratic delegates caucused separately, drafting two state constitutions. The Democratic draft did not contain a remedies provision, nor was a remedies provision proposed or debated by the Democratic delegates. William Anderson & Albert J. Lobb, A History of the Constitution of Minnesota 118 (1921); Ruth Mickelsen, The Use and Interpretation of Article I, Section Eight of the Minnesota Constitution 1861-1984, 10 Wm. Mitchell L. Rev. 667, 674 (1984); see generally Debates and Proceedings of the Minnesota Constitutional Convention (1857) (Earle S. Goodrich, printer, 1857) (containing debates of the Democratic convention). The provision instead originates in the Republican draft.
One Republican representative questioned the necessity of Article I, Section 8’s, provisions because the guarantee of a remedy was implied by the existence of inherent rights and the understanding that the object of government is to secure such rights:
It seems to me that the whole section is unnecessary. We have already declared that men have certain inherent rights, among which are life, liberty and the pursuit of happiness; and to secure those rights governments are instituted among men, deriving their just powers from the consent of the governed. If these are inherent rights and governments are instituted to secure them, does it not follow as a natural presumption that persons are entitled to a remedy if deprived of those rights?
Debates and Proceedings of the Constitutional Convention for the Territory of Minnesota 105 (George W. Moore, printer, 1858) (emphasis added). • Obviously, the representative's comment was rejected. The Remedies Clause was adopted by the Republican Convention and ultimately included as part of Minnesota’s *882 Constitution. Clearly the Constitution’s drafters wanted to make it explicitly clear that the rights enumerated in the Constitution included a right to a remedy for their violation.

. Article I, Section 7, of the Minnesota Constitution states, in relevant part, that "[n]o person shall ... be deprived of life, liberty or property without due process of law”.

. The court cites a number of cases to support its assertion that not every constitutional violation requires a remedy — particularly in the criminal context. First, the court notes that, before the United States Supreme Court applied the exclusionary rule to the states in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), we repeatedly had held that evidence obtained pursuant to an illegal search was admissible in a subsequent criminal proceeding, and that ‘‘[w]e never suggested that the Remedies Clause applied to these constitutional violations.” See State v. Hesse, 154 Minn. 89, 91, 191 N.W. 267, 268 (1922); State v. Rogne, 115 Minn. 204, 206, 132 N.W. 5, 5 (1911); State v. Hoyle, 98 Minn. 254, 255-56, 107 N.W. 1130, 1130 (1906). But my review of the briefs filed in the cases cited by the court confirms that the applicability of the Remedies Clause was never raised by any of the parties in those cases and thus the issue was not decided by the court. The fact that the Remedies Clause was not raised does not mean that the Remedies Clause does not apply to illegal searches.
Second, the court notes that "we regularly decline to remedy a constitutional error that is harmless beyond a reasonable doubt,” pointing to cases in which we declined to reverse the defendant’s conviction and grant a new trial based on a constitutional violation. E.g., State v. Shoen, 598 N.W.2d 370, 373, 379 (Minn.1999); State v. Juarez, 572 N.W.2d 286, 291, 293 (Minn.1997). But the court mistakenly conflates the defendant's right to a remedy with the right to a new trial. The two are not the same. As the court intimates, a defendant does not have the right to a specific remedy. Unless a constitutional error is structural in nature, the remedy is not necessarily the reversal of the conviction and the grant of a new trial; instead, in the context of the admission of illegally obtained evidence, the remedy is review of the trial without consideration of that evidence. Cf. Shoen, 598 N.W.2d at 375 ("[T]he Supreme Court has distinguished ‘structural defect affecting the framework within which the trial proceeds' from ‘ “trial error” — error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of the evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.’ ” (quoting Arizona v. Fulminante, 499 U.S. 279, 307-10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991))). If through such review the court determines that the constitutional error was "harmless beyond a reasonable *884 doubt” — in other words, that the verdict rendered was "surely unattributable” to the error, Shoen, 598 N.W.2d at 377—no further remedy is required. But if the verdict cannot be separated from the error, further remedial action is necessary, i.e., the defendant is entitled to a new trial free of the taint of the constitutional violation.

. The court attempts to minimize its reliance on Olson and Hickman, asserting that the "single reference” to Olson and Hickman "merely support[s] [the court’s] conclusion that the Remedies Clause is more limited than Justice Page contends.” I would point out that Olson and Hickman constitute the only legal authority cited by the court in support of its contention that the Remedies Clause has been limited in scope to remedies that have vested at common law.

. The court responds that, while neither Olson nor Hickman addressed the right under Minn. Const, art. I, § 10, to be free from unreasonable searches 'and seizures of person or property, "the same can be said of Davis v. Pierse, Agin, and every other case interpreting the Remedies Clause upon which Justice Page relies.” The court also asserts that I overstate the impact of Davis, Agin, and similar cases “by suggesting that those cases mandate application of the exclusionary rule, which did not exist until 52 years after Davis and Agin were decided.” There are multiple problems with these assertions. First, my position is that Article I, Section 8, guarantees a remedy for rights "guarded by the constitution,” Davis, 7 Minn, at 18 (Gil. at 6) — including the rights found in Article I, Section 10. As discussed above, Baker and Davis deemed laws to be in violation of Article I, Section 8, when they precluded persons from vindicating or exercising constitutionally guarded rights. See Baker, 11 Minn, at 498-99 (Gil. at 376-77); Davis, 7 Minn, at 20 (Gil. at 8). I would also note that, while the court is correct that Davis and Baker do not specifically address rights guaranteed by Article I, Section 10, in Davis we expressly placed the right to a remedy for all wrongs to "person, property, ■ or character” on equal footing with Article I, Section 10. Davis, 7 Minn, at 18 (Gil. at 6) (stating that the right of the people to be free in their "persons, houses, papers, and effects” from “unreasonable searches” is no "more sacred to the citizen, or more carefully guarded by the constitution” than the Article I, Section 8, right to a remedy). Given the equal constitutional footing of Sections 8 and 10, I find it difficult to understand how wrongs to person of property that violate Section 10 are somehow outside the purview of Section 8’s guarantee of a remedy. Finally, I do not contend that Article I, Section 8, or our cases construing Article I, Section 8, “mandate application of the exclusionary rule” specifically — only that they mandate a remedy.

. The court asserts that rejecting the Davis good-faith exception on the basis of the Remedies Clause would "elevat[e] the exclusionary rule to a constitutional right,” which would have the effect of "imped[ing] the development of better and more effective remedies for police misconduct than the exclusionary rule." The court mischaracterizes my position. I do not contend that the exclusionary rule is a constitutional right; I contend only that Minn. Const, art. I, § 8, requires a remedy for a violation of Minn. Const, art. I, § 10. If the exclusionary rule were replaced with a remedy that was in fact "better and more effective,” there would be no violation of Article I, Section 8. See Schermer v. State Farm Fire & Cas. Co., 721 N.W.2d 307, 316 (Minn. 2006) (“[T]he Minnesota Constitution only protects ‘remedies for which the legislature has not provided a reasonable substitute.’ ” (quoting Hickman, 396 N.W.2d at 14)). But that is not the case here.
The Legislature not only may constitutionally create a “reasonable substitute” remedy, but, as Justice Lillehaug discusses in his dissent, has in fact created a remedy for unconstitutional searches and seizures. See Minn. Stat. § 626.21 (2014) ("A person aggrieved by an unlawful search and seizure may move the district court ... for the return of the property and to suppress the use, as evidence, of anything so obtained....”). Although this court has "primary responsibility under the separation of powers doctrine for the regulation of evidentiary matters,” State v. Olson, 482 N.W.2d 212, 215 (Minn.1992), section 626.21, does not, in my view, impermissibly encroach upon a judicial function. Article I, Section 8, as we have construed it, gives the Legislature authority to create alternative remedies; with section 626.21, the Legislature has done just that, permitting persons who have been subjected to an unlawful search or seizure to bring a motion for the return of the property seized and prohibiting prosecutors from using the fruits of the unlawfully obtained evidence. Accordingly, section 626.21 provides a remedy that is just as valid as the judicially created exclusionary rule and that could be applied here. But it would appear the court is not interested in any remedy.

. Article I, section 18, of the North Carolina Constitution provides:
All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay.