STATE of Minnesota, Appellant,

v.

Shilow NMN COOK, Respondent.

No. C7–99–1790.

Court of Appeals of Minnesota.

April 25, 2000.

Mike Hatch, Attorney General, St. Paul, Amy Klobuchar, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, for appellant.

A. Demetrius Clemons, Minneapolis, for respondent.

Considered and decided by KLAPHAKE, Presiding Judge, CRIPPEN, Judge, and SHUMAKER, Judge.

## OPINION

KLAPHAKE, Judge.

The State of Minnesota appeals from an order suppressing evidence seized after police conducted a warrantless arrest of respondent Shilow Cook. The district court granted Cook's motion to suppress and concluded that police lacked probable cause to arrest Cook based solely on infor-

mation received from a confidential reli-able informant (CRI). Cook has not filed a brief in response to the state's appeal, and this matter is proceeding pursuant to Minn. R. Civ.App. P. 142.03 (if respondent fails to file brief, case shall be determined on merits).

Because the CRI's information lacked sufficient detail and range to establish the CRI's basis of knowledge, we affirm the district court's decision that police did not have probable cause to arrest Cook without a warrant.

## FACTS

The facts of this case are largely undisputed. The parties stipulated to the facts contained in the complaint and police reports, and the testimony presented at the suppression hearing was consistent with the facts contained in these documents.

At the hearing on Cook's motion to suppress, Minneapolis Police Officer Michael Doran testified that on the morning of June 22, 1999, he received a telephone call from a CRI. Doran had worked with this particular CRI in the past and had met him in person. The CRI had previously provided Doran and other officers known to Doran with information that had led to at least 12 other convictions. The CRI was paid for his information. To Doran's knowledge, the CRI had never given any false information.

In the two weeks prior to June 22, the CRI told Doran that a man named Shilow Cook was dealing crack cocaine in the Minneapolis area. In the June 22 phone call, the CRI told Doran that Cook was selling crack cocaine at the YMCA located at 34th and Blaisdell in Minneapolis and that he had the crack cocaine in the waistband of his pants. The CRI further described Cook as a black male in his mid–40's, 5'6" tall, and weighing approximately 150 pounds. The CRI told Doran that Cook was wearing a red shirt, black pants, and a baseball cap. Finally, the CRI stated that Cook was driving a blue Lincoln

with Minnesota license plate number 134PXH.

Within one hour, at approximately 11:30 a.m., Doran and other officers arrived at the YMCA. They saw a blue Lincoln with Minnesota license plate 134PXH parked in the lot. At approximately noon, the officers saw a man leave the YMCA. The man matched Cook's description as given by the CRI. The officers observed the man get into the driver's side of the blue Lincoln.

The officers approached the vehicle and placed the man under arrest. During a search, the officers found 7.2 grams of crack cocaine in the waistband of the man's pants and $1,186 in cash in his pockets. Cook was charged with a controlled substance crime in the second degree in violation of Minn.Stat. § 152.022, subd. 2(1) (1998) ("unlawfully possesses one or more mixtures of a total weight of six grams or more containing cocaine").

At the suppression hearing, Doran claimed that he did not obtain a search warrant prior to arresting Cook because there was insufficient time. Doran acknowledged that the CRI never indicated that he saw Cook selling drugs. Nor is there any evidence that the CRI ever claimed he had personally purchased drugs from Cook.

## ISSUE

Did the district court err in concluding that police lacked probable cause to arrest Cook and in suppressing the evidence seized pursuant to Cook's warrantless arrest?

## ANALYSIS

■■■ To prevail on appeal from a pretrial suppression order, the state must establish that the district court's ruling constitutes clear error and that the ruling will have a critical impact on the state's ability to prosecute the defendant. *State v. Scott,* 584 N.W.2d 412, 416 (Minn.1998). The district court's ruling in this case undeni-

ably has a critical impact because suppression of the evidence renders prosecution of Cook impossible. In addition, because the facts of this case are largely undisputed, the district court's ruling presents a question of law, which this court may independently review. *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992).

Police may arrest a felony suspect without a warrant in any public place[1] provided they have probable cause. *State v. Walker*, 584 N.W.2d 763, 766 (Minn.1998). If an arrest is valid, police may conduct a warrantless search of the suspect as an incident to the arrest without additional justification. *Id.*

In a close case, the lack of a warrant may weigh against a finding of probable cause. *Id.* at 769. Police are encouraged to obtain a warrant issued by a detached judge who can independently evaluate the facts to determine if they support a probable cause finding. *Id.* When determining the legality of a warrantless arrest, we look to the information that police took into consideration when making the arrest, not what they uncovered thereafter. *Id.* The information must allow an independent determination of probable cause and not a mere ratification of the bare conclusions of others. *State v. Doyle*, 336 N.W.2d 247, 249–50 n. 1 (Minn. 1983).

Probable cause for arrest exists where the facts would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that the person under consideration is guilty of a crime. Each case must be determined on its own facts and circumstances, and the facts must justify more than mere suspicion but less than a conviction. *State v. Carlson*, 267 N.W.2d 170, 173–74 (Minn.1978); *see also State v. Riley*, 568

N.W.2d 518, 523 (Minn.1997) ("[T]he police must show that they 'reasonably could have believed that a crime has been committed by the person to be arrested.' "). The lawfulness of an arrest is determined by an objective standard that takes into account the totality of the circumstances. *State v. Perkins*, 582 N.W.2d 876, 878 (Minn.1998); *Riley*, 568 N.W.2d at 523.

When police rely on information provided by an informant, "all of the stated facts relating to the informer should be considered in making a totality-of-the-circumstances analysis." *State v. McCloskey*, 453 N.W.2d 700, 703 (Minn.1990). Police may rely on an informant's tip if the tip has sufficient indicia of reliability. *In re Welfare of G.M.*, 560 N.W.2d 687, 691 (Minn.1997). When assessing reliability, courts examine the credibility of the informant and the basis of the informant's knowledge in light of all the circumstances. *Id.*

The informant in this case was undeniably credible. He was a well-known, paid informant who had been providing police with information that had led to at least 12 convictions and who had never, to Doran's knowledge, provided false information. *See State v. Camp*, 590 N.W.2d 115, 119 n. 8 (Minn.1999) (informant's reliability enhanced by history of providing accurate information); *McCloskey*, 453 N.W.2d at 704 (informant's willingness to meet face-to-face with police adds to credibility). These facts are typically sufficient to establish a CRI's credibility. *See State v. Munson*, 594 N.W.2d 128, 136 (Minn.1999) (noting specific details of CRI's record not necessary and statement that informant "has been used over several years successfully" may be sufficient to infer CRI's veracity) (quoting *State v. Wiley*, 366 N.W.2d 265, 269 (Minn.1985)).

---

1. Cook was either getting into or already sitting in the driver's seat of his parked car when he was arrested. A parked car is treated as a public place for Fourth Amendment purposes. *See State v. Harris*, 590 N.W.2d 90,

98–99 (Minn.1999) (person is not "seized merely because a police officer approaches him in a public place or in a parked car and begins to ask questions") (citation omitted).

 Recitation of facts establishing a CRI's reliability by his proven "track record," however, does not by itself establish probable cause. *See* 2 Wayne R. LaFave, *Search and Seizure* § 3.3(b), at 121 (3d ed.1996). The information obtained from the CRI must still show a basis of knowledge. *Id.* This basis of knowledge may be supplied directly, by first-hand information, such as when a CRI states that he purchased drugs from a suspect or saw a suspect selling drugs to another; a basis of knowledge may also be supplied indirectly through self-verifying details that allow an inference that the information was gained in a reliable way and is not merely based on a suspect's general reputation or on a casual rumor circulating in the criminal underworld. *Id.* §§ 3.3(d), (e), at 140–62. Assessment of the CRI's basis of knowledge involves consideration of the quantity and quality of detail in the CRI's report and whether police independently verified important details of the informant's report. *See Alabama v. White*, 496 U.S. 325, 331–32, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990).

 In this case, the CRI's tip included a description of Cook's clothing, physical appearance, vehicle, and present location. These details, however, fail to offer any explanation for the basis of the CRI's claim that Cook was selling drugs. The CRI never claimed that he had purchased drugs from Cook or that he had seen Cook selling drugs. Although an inference could be made that the CRI had seen Cook that morning based on his description of Cook's clothing, that inference still does not provide a basis for the CRI's claim that Cook was selling drugs.

In addition, police did no independent corroboration other than to verify that the vehicle described by the CRI was parked in the YMCA lot and that the man leaving the YMCA and getting into the driver's side of the vehicle matched the description of Cook given to police by the CRI. Although police were able to corroborate these details within one to one and one-half hours after receiving the CRI's tip, these details did not predict any suspicious behavior on Cook's part. All of these details were entirely innocuous and lacked any incriminating aspects that might corroborate the CRI's claim that Cook was selling drugs at the YMCA. Thus, any link between Cook and illegal activity was nonexistant.

In *State v. Munson*, 594 N.W.2d 128, 136–37 (Minn.1999), the supreme court upheld a warrantless search of a vehicle[2] based almost entirely on a tip from a known, reliable informant. There, police received a telephone call from the CRI regarding the time, place, and manner of delivery of cocaine. *Id.* at 132. When police saw a vehicle matching the CRI's description, the supreme court concluded that they had "reasonable articulable suspicion" to stop the vehicle to investigate. *Id.* at 136. The court concluded, however, that police did not have "probable cause" to search the vehicle until after they corroborated additional details provided by the CRI, including the identity of two of the vehicle's occupants. *Id.*

Although the facts in *Munson* are similar in many respects to the facts of this case, there are several important distinctions. The CRI in *Munson* was able to predict that within one and one-half hours a green rental vehicle would pull up to a particular address with three occupants, two of whom the CRI identified by name. *Id.* When police saw a vehicle matching the CRI's description pull up to the address at the time predicted by the CRI, they ran a license plate check and verified that it was a rental vehicle. *Id.* at 132–33. These facts gave police reasonable suspicion to stop the vehicle and question its occupants; once police verified the identity of two of the occupants, they had probable cause to

---

2. Probable cause to search a vehicle is basically the same as that necessary to support an arrest, with the exception that the focus is on the vehicle, not on the person to be arrested. *In re Welfare of G.M.,* 560 N.W.2d 687, 695 (Minn.1997).

conduct a search of the vehicle. *Id.* at 136–37.

Here, the details provided by the CRI did not predict any future behavior on Cook's part. Rather, the details were simply a report of Cook's appearance and present location, details easily obtainable by anyone, not necessarily by someone with inside information on Cook. In addition, there was nothing suspicious about the time or place of the events here, which took place at midday outside the YMCA. Finally, although the man observed coming out of the YMCA matched the description given to police by the CRI, police apparently arrested the man before verifying that he was Cook.

Under *Munson,* police may have had "reasonable suspicion" to legally stop and question Cook to ascertain his identity. These facts, however, do not support finding that police had "probable cause" to arrest Cook at that time. *See Alabama,* 496 U.S. at 329–330, 110 S.Ct. at 2416 (reasonable suspicion less demanding standard than probable cause and can be established with information that is different in quantity, content, or even reliability). As already discussed, in a close case, the lack of a warrant weigh against a finding of probable cause. *See Walker,* 584 N.W.2d at 769.

## DECISION

The district court did not err in determining that police lacked probable cause to arrest Cook. The district court's suppression order is therefore affirmed.

**Affirmed.**

SHUMAKER, Judge (dissenting).

I respectfully dissent because I believe this case is indistinguishable in any significant way from the controlling case of *State v. Munson,* 594 N.W.2d 128 (Minn.1999).

Here, a credible CRI with a proven track record called the police and told them that Shilow Cook was selling crack cocaine on a particular day at the YMCA located at 34th and Blaisdell in Minneapolis. He described Cook's height, weight, approximate age, and race. The CRI described the colors of Cook's pants and shirt and said Cook would be wearing a baseball cap. The CRI said Cook would have the drugs in the waistband of his pants. The CRI also said Cook would be driving a blue Lincoln with a specific Minnesota license plate number.

The police went to the YMCA. They saw the Lincoln parked in the lot. As they watched the YMCA, they saw a man fitting the description given by the CRI leave the building and get into the Lincoln. The police arrested the man, searched him, and found 7.2 grams of crack cocaine in the waistband of his pants. This was Shilow Cook.

On these facts, the majority holds that there are two reasons the police lacked probable cause to arrest Cook. First, there was no evidence of the basis for the CRI's claim that Cook was selling drugs. The CRI did not say he observed any sale of drugs, nor did he purchase drugs himself. Second, although the police verified the CRI's descriptions before arresting Cook, these were innocent details and they "lacked any incriminating aspects" that might corroborate the CRI's claim.

In *Munson,* a CRI with a proven track record called the police and said that within 1½ to 2 hours a rented 1996 green Bronco or jeep-type vehicle with Minnesota license plates would arrive at a specific St. Paul address. *Id.* at 132. In the vehicle would be three African–American males, two of whom would be Kirk Munson and Roosevelt Curtis. *Id.* The vehicle would contain crack cocaine and the occupants might be armed. *Id.*

The police went to the vicinity of the address, and a Blazer matching the general description the CRI gave drove past the officers. *Id.* at 132–33. The police confirmed that the vehicle was registered to a rental agency. *Id.* at 133. When the Blazer pulled to the curb in front of the

address the CRI had given, the police turned on their squad car lights, pulled behind the Blazer, approached with weapons drawn, and ordered the three African–American male occupants to raise their hands. *Id.* The police then ordered the men out of the vehicle. *Id.* They frisked the men and found no weapons. *Id.* Two of the men identified themselves as Munson and Curtis. *Id.* The police used a narcotics dog to locate marijuana and cocaine in the Blazer. *Id.*

The supreme court upheld the search, saying:

> Thus, in total, prior to searching the Blazer, the police had corroborated the type, year, and color of the vehicle, the fact that it was registered to a rental agency, its destination, the timing of its arrival, and the identity of its occupants. The independent corroboration of even innocent details of an informant's tip may support a finding of probable cause. Under the circumstances of this case, we hold that the corroborated details of the CRI's tip, together with the past reliability of the CRI, gave the police probable cause to believe that the Blazer was carrying illegal drugs * * *.

*Id.* at 136–37 (citations omitted).

There is nothing in the evidence in *Munson* that showed the CRI's *basis for believing* the vehicle would be carrying drugs. That omission did not negate probable cause. The police in *Munson* independently verified that the Blazer was rented and that Munson and Roosevelt were in the vehicle. *Id.* at 133. But these were totally innocent facts that *lacked any incriminating aspects* that might have corroborated the CRI's claim that there would be illegal drugs in the Blazer. The lack of incriminating corroboration did not negate probable cause.

Here, the police corroborated the CRI's tip by observing that the car, the man, the location, and the date were precisely what the CRI said they would be. That corroboration, coupled with the CRI's past substantial reliability, provided the same nature and degree of probable cause found in *Munson.*

There seems to be no meaningful distinction between the two cases. Therefore, I believe *Munson* should be applied as controlling law. The trial court's suppression of the evidence was error, and I would reverse.