*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1759**

State of Minnesota,
Appellant,

vs.

Ejay Freeman,
Respondent.

**Filed February 23, 2015**
**Reversed and remanded**
**Chutich, Judge**
Hennepin County District Court
File No. 27-CR-14-12355

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for appellant)

Mary F. Moriarty, Hennepin County Public Defender, Kellie M. Charles, Assistant Public Defender, Paul J. Maravigli, Assistant Public Defender, Minneapolis, Minnesota (for respondent)

        Considered and decided by Rodenberg, Presiding Judge; Chutich, Judge; and Toussaint, Judge.*

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CHUTICH**, Judge

In this pretrial appeal, the State of Minnesota challenges the district court's order suppressing the evidence found in respondent's mother's home after the execution of a search warrant. Because probable cause existed to believe that the home contained firearms and narcotics when the search warrant was issued, we reverse the district court's suppression order and remand for further proceedings.

## FACTS

The district court issued a warrant authorizing the search of a home on Knox Avenue North, in Minneapolis, for narcotics and firearms. The home belonged to respondent Ejay Freeman's mother. An affidavit supporting the warrant application alleged probable cause based, in part, on information given to Minneapolis Police Officer George Peltz by a confidential reliable informant about Freeman conducting illegal narcotics sales. The informant directly observed Freeman on numerous occasions at the home with firearms that Freeman displayed while selling narcotics. Within 72 hours before the affidavit was signed, the confidential reliable informant saw a large amount of marijuana and two pistols in the basement of the home, and witnessed Freeman selling marijuana to numerous customers who arrived at the front door of the home. The informant identified Freeman through a photograph shown to him by Officer Peltz. Officer Peltz then conducted surveillance of the home and saw Freeman meeting with visitors who arrived at the home and stayed for short periods of time, consistent with narcotics dealing.

2

When police executed the search warrant, they found Freeman, another male, and three young children in a room with a loaded revolver on a table. Police also found over 400 grams of marijuana, a pistol in Freeman's dresser drawer, and approximately $7,900. Freeman admitted that the marijuana was his, claimed that a friend had left the revolver on the table, and said that he was keeping the pistol for his sister.

The state charged Freeman with one count of fifth-degree possession of marijuana, one count of possession of a pistol or assault weapon by a person convicted or adjudicated delinquent of a crime of violence, and one count of endangerment of a child by firearm access. Freeman moved to suppress the evidence seized during the search. The district court granted the motion, concluding no probable cause existed to issue a search warrant because the affidavit did not establish the veracity or reliability of the informant. The state appeals the district court's pretrial ruling.

## DECISION

"When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). When appealing a pretrial suppression order, the state must "clearly and unequivocally show both that the [district court's] order will have a critical impact on the state's ability to prosecute the defendant successfully and that the order constituted error." *State v. Scott*, 584 N.W.2d 412, 416 (Minn. 1998) (quotation omitted).

3

**Critical-Impact**

The critical-impact standard is met when the likelihood of a successful prosecution is significantly decreased by the unavailability of the suppressed evidence. *State v. McGrath*, 706 N.W.2d 532, 539 (Minn. App. 2005), *review denied* (Minn. Feb. 22, 2006). Because the criminal charges are based on evidence seized during the execution of the search warrant, the state will be unable to prosecute Freeman without that evidence. We thus conclude that the suppression order has a critical impact on the state's ability to prosecute its case against Freeman.

**Suppression of the Evidence**

The United States and Minnesota Constitutions protect citizens against unreasonable searches and seizures and provide that no warrant shall issue without a showing of probable cause. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Before searching a residence, unless an exception applies, law enforcement must obtain a valid warrant issued by a neutral and detached magistrate after a finding of probable cause. *See* Minn. Stat. § 626.08 (2014); *State v. Harris*, 589 N.W.2d 782, 787 (Minn. 1999).

This court gives great deference to the issuing judge's finding of probable cause, and our review is limited "to ensuring that the issuing judge had a substantial basis for concluding that probable cause existed." *McGrath*, 706 N.W.2d at 539 (citing *State v. Rochefort*, 631 N.W.2d 802, 804 (Minn. 2001)). A substantial basis in this context means that, given the totality of the circumstances, a "fair probability" exists "that contraband or evidence of a crime will be found in a particular place." *State v. Zanter*, 535 N.W.2d 624, 633 (Minn. 1995) (quotation omitted).

Where probable cause is based on an informant's tip, we consider the totality-of-the-circumstances:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)). In assessing the sufficiency of probable cause in an affidavit, this court "must be careful not to review each component of the affidavit in isolation." *State v. Albrecht*, 465 N.W.2d 107, 109 (Minn. App. 1991).

The state argues that the district court erred by failing to credit the informant's basis of knowledge. We agree. "Recent personal observation of incriminating conduct has traditionally been the preferred basis for an informant's knowledge." *Wiley*, 366 N.W.2d at 269. "[E]ven if [the issuing judge] entertain[s] some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." *Gates*, 462 U.S. at 234, 103 S. Ct. at 2330; *see also State v. Cook*, 610 N.W.2d 664, 668 (Minn. App. 2000) (providing that the assessment of an informant's basis of knowledge "involves consideration of the quantity and quality of detail in the [informant's] report"), *review denied* (Minn. July 25, 2000).

In this case, the supporting affidavit states that within the 72 hours before the warrant was issued, a confidential reliable informant personally "observed a large amount

of marijuana and two pistols in the basement of the residence," and also witnessed Freeman making sales to numerous customers who came to the home to purchase marijuana. The informant also personally observed Freeman on numerous occasions with many firearms, including two 40 caliber semi-automatic pistols and two other small semi-automatic pistols at the residence, and witnessed Freeman displaying the firearms while selling narcotics. When shown a picture of Freeman, the informant identified him as the person selling drugs and possessing the firearms. The informant's knowledge was based on recent, first-hand information, and the informant relayed specific information to Officer Peltz concerning the narcotics transactions and possession of weapons, lending credibility to the tip.

We also agree with the state's argument that the district court did not sufficiently credit the informant's veracity. The supporting "affidavit must provide the magistrate with adequate information from which [the magistrate] can personally assess the informant's credibility." *State v. Siegfried*, 274 N.W.2d 113, 114 (Minn. 1978). Credibility can be established in a number of ways, including by a showing that the informant has a "track record" of providing accurate information and by showing that the details of the informant's tip "have been sufficiently corroborated so that it is clear the informant is telling the truth on this occasion." *Id.* at 114-15.

Here, the supporting affidavit states that the confidential reliable informant had previously provided "information about narcotics dealers in the past that has proven to be true and correct . . . [that] led to the recovery of narcotics, weapons and monies as well as arrests and convictions of suspects." "[A] simple statement that the informant has been

6

reliable in the past" in an affidavit is sufficient to establish an informant's proven track record. *State v. Ross*, 676 N.W.2d 301, 304 (Minn. App. 2004). Providing specific details of the informant's past veracity is not necessary. *State v. Munson*, 594 N.W.2d 128, 136 (Minn. 1999).

In determining that the search warrant lacked probable cause, the district court relied, in part, on *State v. Cook* to state that recitation of the informant's reliability by his proven track record did not, by itself, establish probable cause. *Cook* is factually distinguishable, however, and does not mandate suppression under these circumstances.

In *Cook*, a confidential reliable informant's tip resulted in the *warrantless* arrest of a person suspected of dealing crack cocaine. 610 N.W.2d at 666. Because a warrant was not sought, there was no need to defer to the probable cause determination of a magistrate. This court considered the credibility and reliability of the tip, determining that the informant was "undeniably credible" based on his proven "track record." *Id.* at 667-68. But this court concluded that the information obtained from the informant must also show a basis of knowledge, and that the innocuous details provided by the informant – the description of Cook's clothing, his physical appearance, his vehicle, and his present location – did not explain the basis for the informant's claim that Cook was selling narcotics. *Id.* at 668. The informant in *Cook* never claimed that he had bought drugs from Cook or had seen him selling drugs. *Id.* By contrast, the affidavit here explains that the informant recently and personally observed Freeman at the home with firearms dealing narcotics.

In addition, Officer Peltz corroborated various aspects of the tip. Officer Peltz averred that he "conducted surveillance of the address and observed . . . Freeman meeting customers and letting people into the front door of the address. Customers stayed for short periods of time consistent with narcotics dealing." The district court determined, and Freeman argues, that Officer Peltz's corroboration of these facts did not support the veracity or reliability of the informant. While these details may not be necessarily incriminating on their face, caselaw is clear that a reviewing magistrate may rely on minimal corroboration to evaluate the totality of the circumstances. *See State v. McCloskey*, 453 N.W.2d 700, 704 (Minn. 1990). Corroboration of even part of an informant's tip may suggest that the entire tip is reliable. *Siegfried*, 274 N.W.2d at 115; *see also Wiley*, 366 N.W.2d at 269 (providing that corroboration of facts that are not "key detail[s]" lends "credence to the informant's tip"). Officer Peltz's observation of short visits occurring at the home that were consistent with narcotics-dealing activities help strengthen the informant's veracity.

The state further argues that Freeman's criminal record – a weapons-related arrest in 2009 – bolsters the issuing judge's probable cause determination. To be sure, "[a] person's criminal record is among the circumstances a judge may consider when determining whether probable cause exists for a search warrant." *State v. Carter*, 697 N.W.2d 199, 205 (Minn. 2005). Because this criminal history is limited to an arrest and does not include weapons-related convictions or convictions of controlled-substance offenses, however, it is of limited probative value when determining probable cause. *See id.* ("Courts also occasionally consider arrests not resulting in conviction, as when the

8

arrest involves a crime of the same general nature as the one which the warrant is seeking to uncover. But a criminal record, even a long one, is best used as corroborative information and not as the sole basis for probable cause." (quotation omitted)); *McCloskey*, 453 N.W.2d at 704 (providing that, despite the defendant's criminal history consisting of only two arrests, his "relatively minor trouble with the law was perhaps of some slight probative value").

Finally, great deference is owed to an issuing judge's probable cause determination. *Rochefort*, 631 N.W.2d at 804. "[T]he resolution of doubtful or marginal cases should be largely determined by the preference to be accorded to warrants." *McCloskey*, 453 N.W.2d at 704 (quotation omitted). A reviewing district court does not subject the warrant to de novo review and must not scrutinize the search-warrant affidavit in a grudging or hypertechnical manner. *State v. Anderson*, 439 N.W.2d 422, 425 (Minn. App. 1989) (quoting *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331), *review denied* (Minn. June 21, 1989).

Given the totality of the circumstances set forth in the search warrant and the great deference owed to the issuing judge's determination of probable cause, we hold that the issuing judge had a substantial basis to conclude that there was a "fair probability" that contraband would be found at the home on Knox Avenue. We therefore reverse the district court's suppression order and remand for further proceedings.

**Reversed and remanded.**