*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0887**

State of Minnesota,
Respondent,

vs.

Deundrick Demon McIntosh,
Appellant.

**Filed April 25, 2016
Affirmed
Klaphake, Judge***

Ramsey County District Court
File No. 62-CR-14-7542

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Hooten, Judge; and Klaphake, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KLAPHAKE**, Judge

Appellant Deundrick Demon McIntosh challenges his conviction of possession of a firearm by an ineligible person, arguing that the police did not have reasonable suspicion to stop a vehicle in which he was a passenger, and did not have probable cause to search under the vehicle's hood. Because the police had reasonable, articulable suspicion of criminal activity to justify the stop of the vehicle and probable cause to search under the vehicle's hood, we affirm the district court's order denying appellant's motion to suppress the firearm.

## DECISION

McIntosh argues that the police did not have reasonable suspicion to stop the vehicle in which he was a passenger. "When reviewing pretrial orders on motions to suppress evidence, [appellate courts] may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). We review the district court's findings of fact under a clearly erroneous standard, but we review its legal determinations de novo. *State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006). Deference must be given to the district court's credibility determinations. *State v. Miller*, 659 N.W.2d 275, 279 (Minn. App. 2003), *review denied* (Minn. July 15, 2003).

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures by the government. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A police officer may, however, initiate a limited investigative stop without a warrant if the officer

2

has reasonable, articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1879-80 (1968). Whether the police have reasonable suspicion to conduct an investigative stop depends on the totality of the circumstances and a showing that the stop was not "the product of mere whim, caprice, or idle curiosity." *In re Welfare of M.D.R.*, 693 N.W.2d 444, 448 (Minn. App. 2005) (quotation omitted), *review denied* (Minn. June 28, 2005).

The factual basis required to justify an investigative stop is minimal. *Magnuson v. Comm'r of Pub. Safety*, 703 N.W.2d 557, 560 (Minn. App. 2005). "It need not arise from the personal observations of the police officer but may be derived from information acquired from another person." *Id.* "An informant's tip may be adequate to support an investigative stop if the tip has sufficient indicia of reliability." *Id.* "Having a proven track record is one of the primary indicia of an informant's veracity." *State v. Munson*, 594 N.W.2d 128, 136 (Minn. 1999).

In this case, the investigatory stop of the vehicle was not based on mere whim, caprice, or idle curiosity. A confidential reliable informant (CRI) told Ramsey County Deputy Sheriff Christian Freichels that McIntosh was inside a Thomas Avenue address with a handgun. Deputy Freichels had previously looked up McIntosh's criminal history and knew that it was illegal for McIntosh to possess a firearm. *See* Minn. Stat. §§ 624.713, subd. 1(2), .712, subd. 5 (2014) (stating that it is illegal for a person who has been convicted of aggravated robbery to possess a firearm). The CRI told Deputy Freichels that a vehicle driven by a female would pick up McIntosh from the Thomas Avenue address. The CRI stayed in contact with officers during their surveillance of the address to help identify

3

which vehicle McIntosh entered. And the CRI told the officers that the hood of the vehicle officers subsequently stopped had been opened at the Thomas Avenue address. This information was sufficient to support the inference that appellant was in the vehicle and that he placed the handgun in the vehicle. *See State v. Schrupp*, 625 N.W.2d 844, 845 (Minn. App. 2001) (holding that an investigatory stop "is reasonable when the officer possesses at the inception of the stop articulable objective facts that . . . support[] at least one inference of the possibility of criminal activity"), *review denied* (Minn. July 24, 2001).

McIntosh argues that the CRI was not reliable and that although "[Deputy] Freichels testified the informant had provided reliable information in the past, . . . no other details about this past information or corroboration of Freichels's assessment of this information exist." The district court found that the CRI had provided reliable information to the police in the past that led to the recovery of evidence in other investigations and the charging of suspects for felony drug crimes. This information was sufficient to establish the CRI's veracity. *See Munson*, 594 N.W.2d at 136 (stating that "the particular CRI who provided the information about Munson had given the police reliable information in the past," and that "[w]hile the record does not contain specific details of the CRI's record, further elaboration concerning the specifics of the CRI's veracity is not typically required"). In sum, the officers had reasonable, articulable suspicion of criminal activity that justified the stop.

McIntosh next argues that the officers did not have probable cause to search under the vehicle's hood. "Generally, searches conducted outside of the judicial warrant process are per se unreasonable." *Id*. at 135. But "[t]here is a well-established exception to the

4

search warrant requirement for cases involving transportation of contraband goods in motor vehicles." *Id*. "Under this motor vehicle exception, the police may search an automobile without a warrant if they have probable cause for believing that the vehicles are carrying contraband or illegal merchandise." *Id*. (quotation omitted). Probable cause to search a vehicle "justifies a search of every part of the vehicle and its contents that may conceal the object of the search." *State v. Bigelow*, 451 N.W.2d 311, 311 (Minn. 1990). "The probable cause necessary to support a warrantless search of a motor vehicle must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers." *Munson*, 594 N.W.2d at 136. Probable cause that could justify the issuance of a warrant by a magistrate is "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, (1983).

As discussed above, the CRI had a "proven track record" that established his or her veracity. *See Munson*, 594 N.W.2d at 136. The CRI told Deputy Freichels that McIntosh was inside the Thomas Avenue address carrying a handgun and provided updates as to McIntosh's whereabouts during the surveillance, suggesting that the CRI's basis of knowledge was first-hand observation. The CRI told police that the hood of the vehicle had been opened. After the stop, the officers corroborated that McIntosh was in the vehicle and that a female had picked him up. *See id*. ("The independent corroboration of even innocent details of an informant's tip may support a finding of probable cause."). Under

5

the circumstances, there was a fair probability that the handgun would be found under the hood of the car. *See id.* at 136-37 ("Under the circumstances of this case, we hold that the corroborated details of the CRI's tip, together with the past reliability of the CRI, gave the police probable cause to believe that the Blazer was carrying illegal drugs and thus justified the search of the Blazer under the motor vehicle exception.").

McIntosh asserts that this case is like *State v. Flowers*, 734 N.W.2d 239 (Minn. 2007). In *Flowers*, the supreme court held that the police did not have probable cause to search a vehicle after a traffic stop when the facts did not show "that the officers had any knowledge of Flowers' criminal record, that they were acting on a tip, that they had perceived evidence of alcohol, drugs, guns, or other contraband in the vehicle, or that they had other additional facts that were sufficient to support a finding of probable cause." *Flowers*, 734 N.W.2d at 249. *Flowers* is distinguishable. Here, before officers searched the vehicle, they had specific information that McIntosh was ineligible to possess a firearm, that he was currently in possession of a firearm, that he was in the vehicle, and that the hood of the vehicle had been opened.

McIntosh also relies on *State v. Cook*, 610 N.W.2d 664 (Minn. App. 2000), *review denied* (Minn. July 25, 2000). In *Cook*, this court held that the police lacked probable cause to arrest Cook because the CRI provided only a "description of Cook's clothing, physical appearance, vehicle, and present location," and "[t]hese details . . . fail[ed] to offer any explanation for the basis of the CRI's claim that Cook was selling drugs." 610 N.W.2d at 668. "The CRI never claimed that he had purchased drugs from Cook or that he had seen Cook selling drugs." *Id.* This court observed that the "police did no independent

6

corroboration other than to verify that the vehicle described by the CRI was parked in the YMCA lot and that the man leaving the YMCA and getting into the driver's side of the vehicle matched the description of Cook given to police by the CRI." *Id.* McIntosh's reliance on *Cook* is misplaced. Here, the CRI did provide an explanation for the basis of his or her claim that McIntosh was carrying a handgun: the CRI had recently seen McIntosh carrying a gun and knew McIntosh was in the Thomas Avenue address with a gun.

In sum, the officers had reasonable, articulable suspicion of criminal activity to justify the stop of the vehicle and probable cause to search under the hood of the vehicle for the gun. The district court did not err by denying McIntosh's motion to suppress the firearm.

**Affirmed.**