*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1035**

State of Minnesota,
Respondent,

vs.

James Lamar Davis,
Appellant.

**Filed May 9, 2016
Affirmed
Smith, Tracy, Judge**

Hennepin County District Court
File No. 27-CR-13-5526

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Smith, Tracy, Judge.

## UNPUBLISHED OPINION

**SMITH, TRACY**, Judge

On appeal from a conviction of second-degree controlled-substance possession, appellant James Lamar Davis challenges the district court's denial of his motion to suppress evidence obtained in an investigatory stop. Because police based the stop on a

reliable tip that provided the officers with reasonable suspicion of criminal activity, we affirm.

## FACTS

In December 2012, a confidential reliable informant (CRI) contacted Minneapolis Police Officer Jamie Karshbaum. The CRI had provided Officer Karshbaum with credible information in the past that led to several arrests.

The CRI told Officer Karshbaum that a black male in his 20s was on his way to conduct a crack-cocaine transaction near 16th Avenue and East Lake Street in Minneapolis. The CRI described the man as having a "slightly heavy build with a short fade haircut" and stated that the man was driving a white Ford Taurus with Minnesota license plates UGM 537 and a squeaky front end. The CRI claimed to have seen the man dealing drugs in the previous 30 minutes and provided Officer Karshbaum with the suspected dealer's phone number.

Officer Karshbaum and Officer Tracy Gross drove to the intersection of 16th Avenue and East Lake Street and arrived there approximately ten minutes after receiving the tip. After arriving at the intersection, the officers saw a white Ford Taurus with Minnesota license plates UGM 537, heard the vehicle's squeaky front end, and confirmed that the driver matched the physical description given by the CRI.

Officers Karshbaum and Gross requested that a marked squad car stop the vehicle. Before the stop, Officers Karshbaum and Gross did not observe any traffic-law violations or suspected drug transactions. After stopping the car, uniformed officers identified the driver as Davis and removed him from the vehicle. Officer Gross walked to the driver's

2

side of Davis's car and saw a plastic bag on the floorboard containing what she suspected was crack cocaine. Officer Gross placed the bag on the passenger seat and told Officer Karshbaum about it.

Davis was arrested and charged with a second-degree controlled-substance crime. Davis moved to suppress the evidence obtained during the stop, arguing that the officers lacked reasonable suspicion to stop his vehicle. After hearing testimony from Officers Gross and Karshbaum, the district court denied Davis's motion. The district court found the officers' testimony credible and concluded that the tip from a reliable informant provided the officers with reasonable suspicion to justify the stop.

In April 2014, Davis stipulated to the state's case under Minnesota Rule of Criminal Procedure 26.01, subdivision 4, to preserve the investigatory-stop issue for appeal. The district court found Davis guilty of a second-degree controlled-substance crime and later sentenced him.

Davis appeals.

## DECISION

Davis argues that the district court erred in denying his motion to suppress because the CRI's tip was insufficient to provide police with reasonable suspicion for the stop. The standard of review of a pretrial suppression ruling is de novo on the legal issue of whether a stop was justified by reasonable suspicion and clearly erroneous on the district court's findings of fact. *State v. Burbach*, 706 N.W.2d 484, 487 (Minn. 2005).

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures by the government. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A police

3

officer may constitutionally initiate a limited investigatory stop if the officer has reasonable suspicion of criminal activity. *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008). The reasonable-suspicion standard is not high and is less than what is required to form probable cause or meet the threshold of preponderance of the evidence. *Id.* "The police must only show that the stop was not the product of mere whim, caprice or idle curiosity, but was based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Pike*, 551 N.W.2d 919, 921-22 (Minn. 1996) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968)). We evaluate whether a stop was justified on a totality-of-the-circumstances basis. *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000).

Reasonable suspicion may be based on an officer's independent observations or information from an informant. *Timberlake*, 744 N.W.2d at 393. "[I]nformation given by an informant must bear indicia of reliability that make the alleged criminal conduct sufficiently likely to justify an investigatory stop by police." *Id.* at 393-94. An informant's track record is one indicator of reliability. *See State v. Cook*, 610 N.W.2d 664, 667-68 (Minn. App. 2000), *review denied* (Minn. July 25, 2000) (evaluating probable cause based on an informant's tip). Another factor indicating reliability is a demonstrated basis of knowledge on the part of the informant. *Id.* at 668. The informant's basis of knowledge

> may be supplied directly, by first-hand information, such as when a CRI states that he purchased drugs from a suspect or saw a suspect selling drugs to another; a basis of knowledge may also be supplied indirectly through self-verifying details that allow an inference that the information was gained in a reliable way and is not merely based on a suspect's general

4

reputation or on a casual rumor circulating in the criminal underworld.

*Id.* While an informant's veracity, reliability, and basis of knowledge are factors relevant to determining the value of a tip, allowance must be made for the lesser showing required to meet the reasonable-suspicion standard as compared to the probable-cause standard. *Alabama v. White*, 496 U.S. 325, 328-29, 110 S. Ct. 2412, 2415 (1990). With these principles in mind, we turn to the informant's tip in this case.

Officer Karshbaum testified and the district court found that the CRI had never given Officer Karshbaum false information and had provided reliable information on several previous occasions that helped lead to arrests. "These facts are typically sufficient to establish a CRI's credibility." *Cook*, 610 N.W.2d at 667. The CRI's track record was one indicator of the reliability of the tip.

Davis argues, however, that the tip lacked another indicator of reliability—the CRI's basis of knowledge. Specifically, Davis argues that the CRI's basis of knowledge was insufficient because the tip did not indicate that Davis was involved in "any *present* criminal activity," because the details were too "generic" to support a suspicion of criminal activity, and because police did not independently observe "suspicious behavior" that would corroborate the tip. Davis cites *Cook* in support of this argument. In *Cook*, an informant told the police about a person at a Minneapolis YMCA who was dealing drugs and provided the individual's physical description, as well as his vehicle's make, model, and license-plate information. *Id.* at 666. Police arrived, saw the vehicle, and later arrested an individual matching the given description. *Id.* We determined that the tip was inadequate to provide officers with probable cause for the arrest for several

reasons: the CRI demonstrated no basis of knowledge because he neither observed the suspect selling drugs nor bought drugs from the suspect; the corroborated details provided by the CRI were "entirely innocuous;" and the CRI failed to predict any of the suspect's future behavior. *Id.* at 668-69.

*Cook* does not control this case. Unlike *Cook*, Davis's appeal is not a review of probable cause for an arrest but of reasonable suspicion for an investigatory stop, and in *Cook* we observed that the officers "may have had 'reasonable suspicion' to legally stop and question [the appellant]." *Id.* at 669. Moreover, the CRI's basis of knowledge in this case is more robust than in *Cook*. *See id.* at 668-69. Here, the CRI told officers that he had witnessed Davis in possession of and selling drugs within the previous 30 minutes, stated that Davis was on his way to conduct another drug transaction, and accurately predicted Davis's future arrival at a specific intersection. Additionally, the CRI provided verifiable information, which was later corroborated, about Davis's physical description and his vehicle's make, model, license-plate information, and distinctive squeak.

The state argues that this case is analogous to *State v. Munson*. 594 N.W.2d 128 (Minn. 1999). In *Munson*, an informant contacted a police officer and told the officer that a green, rented SUV bearing Minnesota license plates and containing a large amount of narcotics would arrive at a particular address within one and a half to two hours. *Id.* at 132. Within 20 minutes of the predicted timeframe, the officers saw a matching vehicle arrive at the provided address and stopped the vehicle. *Id.* at 132-33. Our supreme court held "that the corroboration of several specific details of the CRI's tip did provide the

police with the reasonable articulable suspicion of criminal activity that is needed to execute a valid [investigatory] stop." *Id.* at 136.

We agree that *Munson* is analogous. The CRI here provided officers with first-hand knowledge of Davis's criminal activity through the report of seeing Davis in possession of and dealing drugs 30 minutes earlier. The CRI reported that Davis was on his way to another drug deal at a specific intersection. The officers arrived at that intersection about ten minutes after receiving the tip and soon thereafter saw the car described by the CRI. The officers corroborated Davis's physical description and his vehicle's make, model, color, license-plate information, and distinctive squeak. Like in *Munson*, the corroboration of these details bolstered the tip's reliability, and the tip justified the stop. *See id.* at 136.

The reasonable-suspicion standard does not demand that an officer independently observe suspicious behavior at the time of the stop in order to corroborate a tip. So long as the tip is reliable, a tip can form the basis for an officer's reasonable conclusion that criminal activity is afoot. *Timberlake*, 744 N.W.2d at 393-94. A finding of reliability may be supported by the corroboration by police of even innocent details of a CRI's tip. *See Munson*, 594 N.W.2d at 136 (discussing probable cause).

Here, the officers received a reliable tip from a credible informant that Davis possessed drugs and was on his way to perform a drug transaction. The tip provided the officers with reasonable suspicion to stop Davis's vehicle. *See id.* We conclude that the district court did not err when it denied Davis's motion to suppress.

**Affirmed.**