*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1674**

State of Minnesota,
Respondent,

vs.

Marco Allen Coney,
Appellant.

**Filed July 5, 2016
Affirmed
Peterson, Judge**

Hennepin County District Court
File No. 27-CR-13-17275

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Craig E. Cascarano, Minneapolis, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Bjorkman, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**PETERSON**, Judge

In this appeal from a conviction of a first-degree controlled-substance offense, appellant argues that the police did not have a reasonable, articulable suspicion of criminal activity to support the stop of his vehicle. We affirm.

## FACTS

Minneapolis Police Officer Steven Lecy received information from a confidential informant (CI) that a black male who goes by the name "D" would be driving a black Dodge Magnum, license number UJT652, at the intersection of University Avenue Southeast and 6th Avenue Southeast at approximately 10:50 p.m. The CI told Lecy that "D" would have one ounce of cocaine on his person. Police searched a license-plate database and police records and learned that the vehicle was registered to appellant Marco Allen Coney, a black male.

Lecy set up a surveillance team of eight officers in four squad cars near the intersection of University and 6th Avenues; two cars were unmarked, and two were marked but remained out of sight. As predicted by the CI, a black Dodge Magnum with license number UJT652 drove eastbound on University Avenue past the unmarked cars and turned north onto Sixth Avenue at about 10:18 p.m. The driver, who could be seen through a partially open window, matched Coney's description.

An order was given to stop the Dodge. Sergeant Brian Anderson, who was driving a marked squad car southbound on Sixth Avenue toward University Avenue turned on the emergency lights and pulled in front of the Dodge, which was stopped in the northbound lane. As Anderson and another officer started to get out of their squad car, the driver of the Dodge put the Dodge in reverse and started driving backwards down Sixth Avenue toward University Avenue at a high speed. After driving backwards for about one half of a block, the Dodge crashed into a marked squad car that was approaching from behind.

Coney was taken from the Dodge and placed under arrest. During a search incident to the arrest, officers recovered 36 grams (1.3 ounces) of cocaine and $3,270 in currency. He was charged with first-degree controlled-substance crime and fleeing a police officer in a motor vehicle.

Coney made a pretrial motion to suppress all evidence obtained as a result of his warrantless arrest. The district court denied the motion to suppress. Coney waived his right to a jury trial, the parties stipulated to the facts contained in the complaint, and the controlled-substance charge was submitted to the court for a trial on stipulated facts. The district court found Coney guilty. The court dismissed the fleeing-a-police-officer charge, and imposed a 72-month executed sentence for the controlled-substance conviction. This appeal followed.

## DECISION

> When [an appellate court] review[s] a district court's pretrial order on a motion to suppress evidence, the district court's factual findings are reviewed under a clearly erroneous standard. But legal determinations, such as whether there was a seizure and, if so, whether that seizure was unreasonable, are reviewed de novo.

*State v. Eichers*, 853 N.W.2d 114, 118 (Minn. 2014) (citation omitted), *cert. denied*, 135 S. Ct. 1557 (2015). Even when findings of fact are based solely on documentary evidence, they "shall not be set aside unless clearly erroneous."[1] *State v. Shellito*, 594 N.W.2d 182, 186 (Minn. App. 1999) (quoting Minn. R. Civ. P. 52.01).

---

[1] The factual record submitted to the district court with respect to Coney's motion to suppress included police reports written by officers who were at the scene of the stop.

3

*Legality of Investigative Stop*

The United States and Minnesota Constitutions guarantee individuals the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. The Fourth Amendment applies to an investigatory stop of a vehicle. *United States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 694-95 (1981). The Minnesota Supreme Court has held that the principles and framework of *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968), apply when evaluating the reasonableness of seizures during traffic stops even when a minor law has been violated. *State v. Askerooth*, 681 N.W.2d 353, 363 (Minn. 2004).

Under *Terry*, a brief investigatory stop requires only reasonable suspicion of criminal activity, rather than probable cause. 392 U.S. at 21-22, 88 S. Ct. at 1880. "The police must only show that the stop was not the product of mere whim, caprice or idle curiosity, but was based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Pike*, 551 N.W.2d 919, 921-22 (Minn. 1996) (quoting *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880).

> While the [reasonable suspicion] standard is less demanding than probable cause or a preponderance of the evidence, it requires at least a minimal level of objective justification for making the stop. Police must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity. They must articulate a particularized and objective basis for suspecting the particular person stopped of criminal activity.

*State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quotations and citation omitted). "The reasonable suspicion standard can also be met based on information provided by a

reliable informant. But information given by an informant must bear indicia of reliability that make the alleged criminal conduct sufficiently likely to justify an investigatory stop by police." *Id.* at 393-94 (citations omitted).

Coney argues that the CI was not reliable and that the details provided by the CI "were entirely innocuous and lacked any incriminating aspects that might corroborate the [CI's] claim that [a]ppellant was selling drugs." But, in the context of making a determination of probable cause for issuing a search warrant, the Supreme Court has explained that "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Illinois v. Gates*, 462 U.S. 213, 243 n.13, 103 S. Ct. 2317, 2335 n.13 (1983).

In *Gates*, police received an anonymous handwritten letter that described a routine that Sue and Lance Gates followed to travel from Illinois to Florida to buy illegal drugs and transport the drugs to Illinois. *Id.* at 225, 103 S. Ct. at 2325. An investigator learned that an Illinois driver's license had been issued to a Lance Gates and that an L. Gates had made an airline reservation for a flight from Chicago to West Palm Beach, Florida. *Id.* at 225-26, 103 S. Ct. at 2325-26. Investigators observed Gates as he boarded the flight in Chicago, and, when he arrived in Florida, investigators observed Gates as he followed the routine described in the letter. *Id.* at 226, 103 S. Ct. at 2326. These facts were presented to an Illinois judge who issued a search warrant for the Gateses' car and home. *Id.* Police who were waiting for the Gateses when they returned home by car from Florida searched their car and home and found marijuana, weapons, and other contraband. *Id.* at 227, 103 S. Ct. at 2326.

The Supreme Court determined that, by itself, the anonymous letter would not provide the basis for determining that there was probable cause to believe that contraband would be found in the Gateses' car and home. *Id.* But, because the information in the letter was reasonably corroborated by other matters within the investigator's knowledge, the judge who issued the warrant could rely on the letter. *Id.* at 243-44, 103 S. Ct. at 2335. The Supreme Court explained:

> The corroboration of the letter's predictions that the Gateses' car would be in Florida, that Lance Gates would fly to Florida in the next day or so, and that he would drive the car north toward Bloomingdale all indicated, albeit not with certainty, that the informant's other assertions also were true. . . .
> . . . [T]he anonymous letter contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted. The letterwriter's accurate information as to the travel plans of each of the Gateses was of a character likely obtained only from the Gateses themselves, or from someone familiar with their not entirely ordinary travel plans. If the informant had access to accurate information of this type a magistrate could properly conclude that it was not unlikely that he also had access to reliable information of the Gateses' alleged illegal activities.

*Id.* at 244-45, 103 S. Ct. at 2335-36. The Supreme Court concluded that the corroborated letter was sufficiently reliable to establish probable cause to search because "[i]t is enough that there was a fair probability that the writer of the anonymous letter had obtained his entire story either from the Gateses or someone they trusted. And corroboration of major portions of the letter's predictions provides just this probability." *Id.* at 246, 103 S. Ct. at 2336.

6

Because the corroborated letter in *Gates* was sufficient to establish probable cause to issue a search warrant, we conclude that the CI's tip that Coney would be carrying cocaine at a specific place and time in a specific automobile, together with corroboration by the police of most of the details provided in the tip, were sufficient to establish the less demanding standard of reasonable suspicion needed to justify an investigative stop. Like the letter in *Gates*, the CI's tip predicted Coney's future behavior, and police did not stop Coney until they observed the predicted behavior. The only detail in the tip that police did not corroborate before making the stop was that Coney was carrying cocaine, and the accuracy of the corroborated details established the reliability needed to make the alleged criminal conduct sufficiently likely to justify an investigatory stop by police.

Furthermore, unlike the letter writer in *Gates*, the CI was not anonymous; Officer Lecy knew the CI. This court held in *State v. Balenger*, 667 N.W.2d 133, 138 (Minn. App. 2003), *review denied* (Minn. Oct. 21, 2003), that "uncorroborated anonymous tips provided to police face to face are sufficiently reliable to justify an investigative stop, because the tipster puts himself in a position where his identity might be traced, and he might be held accountable for providing any false information." Because the CI's tip about Coney was both corroborated and provided by a known person who could be held accountable for providing any false information, the CI's tip was more reliable than the tip in *Balenger*.

Coney argues that *State v. Cook*, 610 N.W.2d 664 (Minn. App. 2000), is controlling. In *Cook*, this court held that innocuous descriptive information provided by a confidential reliable informant (CRI) was insufficient to establish probable cause to arrest the defendant because the basis of the CRI's knowledge was unknown. 610 N.W.2d at

7

668-69. This court listed the details provided by the CRI, including "a description of [the defendant's] clothing, physical appearance, vehicle, and present location," but noted that "police did no independent corroboration other than to verify" innocent details provided by the CRI. *Id*. at 668. This court concluded that "the details provided by the CRI *did not predict any future behavior* on [the defendant's] part," and were "easily obtainable by anyone, not necessarily by someone with inside information on [the defendant.]" *Id*. at 669 (emphasis added). Unlike the information that the CRI provided in *Cook*, the details that the CI provided to Lecy predicted Coney's future behavior, and the police corroborated the details, which established the reliability of the CI's tip.

*Intervening Occurrence*

We further conclude that Coney's attempting to flee and crashing into the squad car were intervening facts sufficient to justify the officers' arrest and search of Coney. Coney was seized when Officer Anderson illuminated his flashing lights and pulled into Coney's lane to stop his vehicle. *See State v. Bergerson*, 659 N.W.2d 791, 795-96 (Minn. App. 2003) (concluding that defendant was seized when a police car with red lights flashing followed immediately behind defendant's car for some time). Instead of cooperating when confronted by police, Coney attempted to flee and crashed into a squad car.

Fleeing by means of a motor vehicle a peace officer who is acting in the lawful discharge of an official duty is a felony. Minn. Stat. § 609.487, subd. 3 (2014). Police may arrest a felony suspect without an arrest warrant in any public place, provided that they have probable cause, and, if an arrest is valid, police may conduct a warrantless search

8

of the arrestee as an incident of the arrest. *State v. Walker*, 584 N.W.2d 763, 766 (Minn. 1998).

> When police have arrested a suspect without a warrant, the test is whether the officers in the particular circumstances, conditioned by their own observations and information and guided by the whole of their police experience, reasonably could have believed that a crime had been committed by the person to be arrested. A determination of whether the police had probable cause to arrest is a determination of constitutional rights, and this court makes an independent review of the facts to determine the reasonableness of the police officer's actions.

*State v. Olson*, 436 N.W.2d 92, 94 (Minn. 1989).

The police observed Coney as he fled after Anderson pulled his squad car in front of Coney and activated the flashing lights. Based on these observations, the police reasonably could have believed that Coney had committed a crime. Because the police had probable cause to arrest, the arrest and the search that followed were lawful.

**Affirmed.**